TILLMAN PEARSON, Judge.
The appellee is a Cuban National who escaped from Castro. Unlike most of these unfortunate Cuban refugees, he brought with him $167,000. He delivered the money to another Cuban in Miami, Florida. Later, the appellee sued the appellant, to whom he had delivered the money, upon an alleged promise to pay a commission for the transportation of the money. The cause was tried before the court without a jury and resulted in a final judgment for the plaintiff, appellee. The defendant appeals.
The trial judge made complete and extensive findings of fact which have greatly aided us in determining the merits of appellant’s contentions. Having determined that these findings are supported by the record, we adopt them as the statement of facts on this appeal.
“Plaintiff, JOSE A. RODRIGUEZ TRUJILLO, (hereafter referred to as TRUJILLO), is a native of Metanzas, Cuba, and was employed there as a mechanic. He escaped Cuba by motor boat on June IS, 1963 and arrived in Miami, Florida two days later. He carried with him from Cuba a sealed package and a jacket. The package had been delivered to him in Havana, Cuba by a stranger introduced to him as ALFREDO VIERA PRIETO, (hereafter referred to as PRIETO). PRIETO advised the plaintiff that the package contained money which he desired to be delivered to his daughter in Miami, Florida, and that upon delivery, plaintiff would be entitled to receive twenty (20%) per cent of the amount of money contained in the package. Plaintiff was further advised that the daughter could be contacted *897 through FERNANDO BUSTO (hereafter referred to as BUSTO), a former Cuban attorney who had been PRI-ETO’S attorney for many years prior to BUSTO’S exile after Castro came into power.
“After his arrival in Miami, plaintiff contacted BUSTO and advised him of his desire to meet with MARIA JOSEFA VIERA GONZALEZ a/k/a MARIA OTERO, (hereafter referred to as MARIA).
“MARIA, daughter of PRIETO, is a resident of Puerto Rico, although a native of Cuba. She made frequent trips to Miami from Puerto Rico, and on the occasion of these trips would contact and consult with BUSTO on various financial and legal matters.
“On August 8, 1963, following telephonic arrangements between TRUJILLO and BUSTO, plaintiff met with defendant, MARIA at BUSTO’S house in Miami. At the meeting TRUJILLO produced the package (still sealed). The parties opened the package and found it to contain $167,000.00 in United States currency. After determining the amount contained in the package, TRUJILLO requested payment to him of twenty (20%) per cent ($33,400.00) ; the defendant, MARIA, agreed to pay him this sum, but requested fifteen (15) days within which to determine whether there were any shortages. This was agreeable to TRUJILLO. Two documents were prepared by BUSTO, one being a receipt, and the other being a document titled “Acta de Entraga”, the latter of which amounted to an acknowledgment of delivery of $167,000.00. The parties then proceeded to the office of a local attorney who notarized the Acta de Entraga. The defendant, MARIA, took her money and then departed, as did the plaintiff. Prior and up to August 8, 1963, TRUJILLO had sole dominion and possession of the funds transferred to MARIA. He delivered the money to MARIA in consideration of her promise to pay him a sum equal to twenty (20%) per cent of the amount delivered. After delivery, MARIA assumed unconditional dominion, possession and control of the money. The transaction between MARIA and TRUJILLO was entered into in Miami, Florida, to be performed in Miami, Florida.
“After delivery, the fifteen (15) day period expired, and plaintiff did not receive the money promised, although there is evidence of abortive attempts of the parties to contact each other; no further direct contact was made between them until the filing of this action.
“The defendant, PRIETO, was never served with process in this cause.”
The main thrust of the appeal is that the agreement between the appellee and appellant’s father in Cuba was illegal under Cuban law. Upon this premise, it is argued that the contract made in this Country was in fact only a ratification of an illegal contract and that the Miami contract may not be enforced in our courts.
The principle that courts will not enforce illegal contracts is well established. Schaal v. Race, Fla.App.1961, 135 So.2d 252. This principle is founded upon public policy; that is, the objection which avoids the illegal contract comes from the public at large who demand that there can be no legal remedy for that which is itself illegal. Indeed, there rests upon the courts the affirmative duty of refusing to sustain that which by the valid laws of the state, statutory or organic, has been declared repugnant to public policy. To *898 do otherwise would be for the law to aid in its own undoing. Schaal v. Race, supra.
In Atlantic Coast Line R. Co. v. Beazley (1907), 54 Fla. 311, 45 So. 761, at page 785, the Court examined the authorities on the subject of public policy. Its conclusions on the subject are condensed in headnote 14 as follows:
“ ‘Public policy’ is variable. The very reverse of that which is the policy of the public at one time may become public policy at another; hence no fixed rules can be given by which to determine what is public policy. A contract is not void, as against public policy, unless it is injurious to the interest of the public, or contravenes some established interest of society. It is the province of a court to expound the law only, and not to speculate upon what is the best, in its opinion, for the advantage of the community. Hence the public policy of a state or nation should be determined by its Constitution, laws, and judicial decisions, and not by the varying opinions of laymen, lawyers, or judges as to the demands of the interests of the public. Judicial tribunals should hold themselves bound to the observance of rules of extreme caution when called upon to declare a transaction void on the ground of public policy, and prejudice to the public interest must clearly appear before a court would be warranted in pronouncing the transaction void on this account.”
We hold that it is not contrary to the public policy of this State to enforce a contract made in this Country to compensate a refugee from the Castro government for bringing the assets of a Cuban National out of Cuba.
We have examined each of the other points presented in the appellant’s brief and hold that they do not demonstrate reversible error.
Affirmed.