HARTFORD LIFE INSURANCE COMPANY, a corporation,

v.

The TITLE GUARANTEE COMPANY, a corporation, et al.

Appeal of WALKER & DUNLOP, INC., a corporation.

HARTFORD LIFE INSURANCE COMPANY, a corporation, Appellant,

v.

The TITLE GUARANTEE COMPANY, a corporation, et al.,

Walker & Dunlop, Inc., a corporation.

Nos. 74–1451, 74–1461.

United States Court of Appeals, District of Columbia Circuit.

Argued April 15, 1975.

Decided Oct. 14, 1975.

---

Peter Barnes, Washington, D. C., for appellant in No. 74–1451 and appellee Walker & Dunlop, Inc., in No. 74–1461.

Roger E. Warin, Washington, D. C., with whom Stanley C. Morris, Jr., Washington, D. C., was on the brief for appellant in No. 74–1461. James V. Dolan and Roger E. Warin, Washington, D. C., entered appearances for appellee Hartford Life Ins. Co. in No. 74–1451.

Thomas S. Jackson, Washington, D. C., with whom Patricia D. Gurne, Washington, D. C., was on the brief for appellees The Title Guarantee Co. and The Suburban Title and Ins. Corp.

Before BAZELON, Chief Judge, WRIGHT, Circuit Judge, and WEIGEL,* United States District Judge for the Northern District of California.

Opinion for the Court filed by Judge Weigel.

WEIGEL, District Judge.

This case turns upon facts which are somewhat complicated and include prior litigation before this Court. In *In re Parkwood, Inc.,* 149 U.S.App.D.C. 67, 461 F.2d 158 (1971), we invalidated a loan entered into in violation of the District of Columbia Loan Shark Law, D.C.Code § 26–601 *et seq.* The effect of the decision was to render uncollectable the unpaid balance of approximately $79,000.00. The present case involves a tri-cornered dispute as to bearing the loss. The parties to that dispute are Walker & Dunlop, Inc., the original maker of that loan, Walker & Dunlop's successor-in-interest, Hartford Life Insurance Company, and two title companies, The Title Guarantee Company and The Suburban Title and Investment Corporation (hereinafter "the Title Companies"). Hartford, the plaintiff below, appeals from the District Court's order granting summary judgment in favor of defendants and denying Hartford's motion for leave to file a second amended complaint. We reverse.

In October, 1960, Walker & Dunlop, a real estate broker and mortgage banker, loaned $100,000 to Suburban Motors, Inc. The loan, evidenced by a promissory note, was to bear interest at an annual rate of 6½% and was secured by a deed of trust on real property owned by Suburban. Prior to closing the loan, Walker & Dunlop obtained a commitment from the Title Companies insuring Walker & Dunlop and its successors-in-interest against "any defect in the execution" of the deed of trust. In January, 1961, pursuant to an understanding reached before the loan was made, Walker & Dunlop transferred the note and deed of trust to Hartford, endorsing the note "without recourse".

In March, 1962, Suburban sold the property, subject to the deed of trust, to Adams Properties, Inc., a subsidiary of Parkwood, Inc. In July, 1966, these companies filed petitions for reorganization under the Bankruptcy Act. Later that year, Hartford filed a proof of claim as a secured creditor of Adams for the balance due on the note—some $79,-000.00.

---

* Sitting by designation pursuant to 28 U.S.C. § 292(d).

In May, 1968, the Trustee appointed for Adams objected to the claim on the ground that the loan had been made in violation of the Loan Shark Act, Section 601. That statute makes it unlawful to charge yearly interest on a secured loan at a higher rate than 6% unless a license has been procured to charge the higher rate.[1] Hartford asserted that Walker & Dunlop, which had no license, was exempted from the provisions of the Act because it was a "real estate broker" within the meaning of Section 610.[2] The Referee and the District Court agreed with this contention. However, in *In re Parkwood, supra,* this Court found that Walker & Dunlop was not acting as a real estate broker when it made the loan to Suburban, that the loan was subject to the Act, and that the loan and accompanying deed of trust were void. Hartford's proof of claim was disallowed.

Hartford instituted this action in December, 1972. In its amended complaint, Hartford seeks to recover its loss from Walker & Dunlop on contractual theories of failure of consideration, breach of warranty, and unjust enrichment. In June, 1973, Hartford sought leave to file a second amended complaint which, if permitted, would add allegations of fraud and concealment. Alternatively, Hartford seeks recovery from the Title Companies on the basis of their undertaking in the title insurance policy.

The District Court held that the causes of action against Walker & Dunlop in the amended complaint were barred by the applicable statute of limitations and by the "without recourse" endorsement on the note which Walker & Dunlop had transferred to Hartford. The Court denied Hartford's motion for leave to file the second amended complaint on the ground that the statute of limitations had run. As to the Title Companies, the District Court held that to allow Hart-

ford an insurance recovery for a loss caused by Walker & Dunlop's violation of the Loan Shark Act would be contrary to public policy.

The District Court found that the claims alleged against Walker & Dunlop in Hartford's amended complaint accrued in January, 1961, when Hartford purchased the note and deed of trust from Walker & Dunlop. Since almost twelve years elapsed between January, 1961, and the commencement of this litigation in December, 1972, the Court held that these claims are time-barred by D.C. Code § 12–301(7) (1973 ed.), which sets a three-year limitations period for actions based on contract. We disagree with the holding.

 The right to sue did not accrue until the plaintiff had a cause of action. *United States v. One 1961 Red Chevrolet Impala Sedan,* 457 F.2d 1353 (5th Cir. 1972). Hartford's cause of action against Walker & Dunlop depended upon a prior adjudication of the rights of the trustee in bankruptcy of Adams in *In re Parkwood.* That adjudication was not finally made by this Court until 1971. Thus, Hartford's suit against Walker & Dunlop was commenced well within the applicable limitations period.

The borrower (first Suburban and later Adams) paid all the installments due under the loan agreement between 1961 and 1966. Therefore, until May, 1968, Hartford had no reason to believe that its proof of claim would not be recognized. Moreover, Hartford could not have sued Walker & Dunlop prior to May, 1968, because Hartford had not theretofore suffered any legally cognizable damage. *Hodge v. Service Machinery Co.,* 438 F.2d 347 (6th Cir. 1971).

 A somewhat more difficult question is whether Hartford's cause of ac-

---

1. D.C.Code § 26:601 provides as follows:

 It shall be unlawful and illegal to engage in the District of Columbia in the business of loaning money upon which a rate of interest greater than six per centum per annum is charged on any security of any kind . . . without procuring license . . . ."

2. D.C.Code § 26:610 provides that:

 (a) Nothing contained in this chapter shall be held to apply to the legitimate business of . . . real estate brokers . . . ."

tion against Walker & Dunlop accrued in May, 1968, when the Trustee in bankruptcy formally objected to Hartford's proof of claim. At that time, there was no obstruction to Hartford's filing suit against Walker & Dunlop and proceeding to judgment. However, in order to do so, Hartford would have had to abandon its substantial legal claim against the trustee. We conclude that the statute of limitations should not be invoked so as to penalize Hartford for making the wrong choice. With the benefit of hindsight, we can state that Hartford "should have been on notice" of the illegality of the loan (*In re Parkwood, supra,* 461 F.2d at 175–76), and that, therefore, Hartford would have been better advised to proceed immediately against Walker & Dunlop, rather than engaging in a protracted and ultimately futile legal battle with the trustee. But prior to our decision in *Parkwood,* the matter was not so clear. Both the Referee and the District Court agreed with Hartford's contention that its proof of claim was valid. Our decision on appeal was by divided vote and even the majority conceded that whether Walker & Dunlop was entitled to a Loan Shark Act exemption was "not . . . perfectly plain" from the face of the statute. 461 F.2d at 175. In these circumstances, we have concluded it would be grossly inequitable to hold that the cause of action arose prior to our decision in *Parkwood. See Walker v. Continental Life & Accident Co.,* 445 F.2d 1072, 1075 (9th Cir. 1971). We find no support for such a ruling in policy or case law. We decline to make it here.

■ Hartford's proposed second amended complaint alleges that until March, 1973, Walker & Dunlop fraudulently concealed from Hartford the fact that Walker & Dunlop was concerned,

before the loan to Suburban was entered into in 1960, that such a loan might violate the Loan Shark Act. The statute of limitations for a cause of action based upon fraud or concealment does not begin to run until the date on which the defrauded party ascertains, or with the exercise of due diligence should ascertain, the material facts upon which the claim is based. *See, e. g., Maloney v. E. I. DuPont de Nemours & Co.,* 122 U.S.App.D.C. 268, 352 F.2d 936 (1965), *cert. denied,* 383 U.S. 948, 86 S.Ct. 1201, 16 L.Ed.2d 210 (1966); *Wiren v. Paramount Pictures,* 92 U.S.App.D.C. 347, 206 F.2d 465 (1953), *cert. denied,* 346 U.S. 938, 74 S.Ct. 378, 98 L.Ed. 426 (1954). There is nothing in the record to indicate that Hartford should have learned of Walker & Dunlop's alleged conduct any earlier than it did. Therefore, Hartford's motion for leave to file its second amended complaint, filed in June, 1973, fell well within the permissible limitations period and the District Court's denial of the motion on that ground was an abuse of discretion. On remand, the District Court should reconsider Hartford's motion without taking the statute of limitations into account.[3]

The District Court also erred in ruling that Hartford's claims against Walker & Dunlop were barred by the "without recourse" endorsement on the note transferred by Walker & Dunlop to Hartford.

■ The legal effect of a "without recourse" endorsement is defined by the Uniform Commercial Code. D.C.Code § 28:3–417(3), (2)(d).[4] Thus, whether or not this endorsement bars Hartford's claims against Walker & Dunlop must be determined with reference to the principles of commercial law established therein.

■ A "without recourse" endorsement is a qualified endorsement; it does

3. Lest there by any confusion, it should be made clear that the issue of the legal sufficiency of the claims presented in Hartford's second amended complaint is not before us and we express no opinion on that subject.

4. Under D.C.Code § 28:3–417(2)(d), the transferor of an instrument warrants to his transferee that "[n]o defense of any party is good against him . . . ." Subdivision (3) provides that "[b]y transferring 'without recourse' the transferor limits the obligation stated in subsection (2)(d) to a warranty that he has no knowledge of such a defense."

not eliminate all obligations owed by the transferor of an instrument to his transferee. By endorsing the note "without recourse", Walker & Dunlop still warranted to Hartford that it had no knowledge of any fact which would establish the existence of a good defense against the note.[5] Walker & Dunlop breached this warranty. At all times it was fully aware of the facts relevant to our later determination that the note was unenforceable because of the illegality of the underlying loan. Walker & Dunlop's ignorance of the law is no excuse. The U.C.C. preserves the pre-Code law as to "mistake" (D.C.Code § 28:1–103), with the consequence that a unilateral mistake of law does not ordinarily affect the liability of any indorser. 2 Anderson, *Uniform Commercial Code* § 3–414:7 (2d ed. 1971), p. 996.

Hartford would have destroyed its warranty protection had it not acted in "good faith". D.C.Code § 28:3–417(2); Note: "Warranties on the Transfer of a Negotiable Instrument—U.C.C. 3–417 (2)," 17 Stan.L.Rev. 77, 94–96 (1964). There is no indication that it did not do so here. The U.C.C. definition of "good faith", contained in D.C.Code § 28:1–201(19), requires "honesty *in fact* in the conduct . . . concerned." (Emphasis added.) Although Hartford had full knowledge of the same facts as Walker & Dunlop and made the same "mistake" of law (*see Parkwood*, 461 F.2d at 175–76), it did not subjectively know when it accepted the note that a good defense existed against it. Therefore, it is entitled to the coverage of the warranty. *See* 17 Stan.L.Rev. at 95.[6]

Turning to Hartford's claim against the Title Companies, we conclude that granting summary judgment in favor of these defendants was inappropriate. Assuming that the title insurance policy covered the loss, enforcement of the policy would not contravene public policy. It is only for the knowledgeable and intentional wrongdoer that the practice of voiding insurance contracts as being contrary to public policy is reserved. *See, e. g., Northwestern National Casualty Co. v. McNulty,* 307 F.2d 432, 442 (5th Cir. 1962). It is settled law that a person may insure himself against the results of his own negligent violations of law. *See* 15 Williston on Contracts, ¶ 1749A, p. 138; Recent Decisions Note: "Insurance—Public Policy—Liability of Insurer for Punitive Damages and Penalties", 40 Mich.L.Rev. 128 (1941), citing 6 Blashfield, *Encyclopedia of Automobile Law and Practice,* § 3974 (1935); *Messersmith v. American Fidelity Co.,* 232 N.Y. 161, 163, 133 N.E. 432 (1921). In this case, the District Court misread our decision in *Parkwood* for the conclusion that Hartford had knowledge of the illegality of the loan. In fact, as already pointed out, *Parkwood* held only that Hartford *should have known* that the loan transaction violated the Loan Shark Act. Hartford could not have had subjective knowledge of any violation since it had a substantial legal claim in *Parkwood* that no such violation had occurred.

In their briefs on appeal, Hartford and the Title Companies dispute whether the loss sustained by Hartford was covered by the title insurance policy. This factu-

---

**5.** The "knowledge" limitation of § 3–417(3), quoted in n.4, *supra,* is not explicitly confined to knowledge of facts; however, this reading of the Section is supported by reference to Section 65 of the Uniform Negotiable Instruments Law, from which the existing Uniform Commercial Code provision is derived. That section provided that the "without recourse" indorser warranted "(4) that he has no knowledge *of any fact* which would impair the validity of the instrument or render it valueless." (Emphasis added.) *See also: Armstrong v. McCluskey,* 188 Ark. 406, 65 S.W.2d 558 (1933), holding that the assignor of a note "without recourse" warrants that there is no legal defense against the note arising out of the assignor's own connection with its origin, such as the defense of usury.

**6.** Hartford erroneously characterizes its warranty claim as based upon an express warranty of title in a 1948 agreement entered into between Hartford and Walker & Dunlop and upon the implied warranty of title specified in D.C.Code § 28:3–417(1)(a). In fact, no warranty of title claim could successfully be made in this case. It is not disputed that Walker & Dunlop had title to the instrument and that its indorsement was genuine and authorized. *See* 2 Anderson, *supra,* § 3–417:8, p. 1022.

al issue should be resolved by the District Court on remand.

One further comment is in order. In the proceedings below, Walker & Dunlop filed cross-claims for indemnification against the Title Companies. The Court issued a consent order permitting the Title Companies to defer answering these claims pending a determination of the Title Companies' motion to dismiss Hartford's amended complaint. Walker & Dunlop now argues that the District Court, in granting the Title Companies' motion (which it treated as one for summary judgment), in effect dismissed Walker & Dunlop's cross-claims. We do not agree with Walker & Dunlop that the District Court ruled, either explicitly or implicitly, on the cross-claims. With all issues finally resolved in favor of Walker & Dunlop and against Hartford, Walker & Dunlop's cross-claim for indemnification became moot. Since we hereby reverse the order granting summary judgment in favor of Walker & Dunlop, the cross-claims are no longer moot. They are still pending before the District Court, for proper determination at that level.

So ordered.