404 So.2d 1059 (1981)
MORGAN WALTON PROPERTIES, INC., et al., Appellants,
v.
INTERNATIONAL CITY BANK & TRUST CO., etc., et al., Appellees.
Joseph F. MORGAN and Johnnie Mae Morgan, Appellants,
v.
INTERNATIONAL CITY BANK & TRUST CO., ETC., et al., Appellees.
No. 58879.
Supreme Court of Florida.
October 8, 1981.
*1060 Louis K. Rosenbloum of Levin, Warfield, Middlebrooks, Mabie & Magie, Pensacola, for appellants.
James M. Weber of Beggs & Lane, Pensacola, for appellees.
BOYD, Justice.
This cause is before the Court for decision of a question certified by the United States Court of Appeals for the Fifth Circuit. International City Bank & Trust Co. v. Morgan Walton Properties, Inc., 612 F.2d 227 (5th Cir.1980).
Appellee International City Bank and Trust Company, a Louisiana banking corporation, now dissolved, brought two mortgage foreclosure actions in the United States District Court for the Northern District of Florida, one of them (Fifth Circuit case no. 77-3255) against two Florida corporations, a partnership, and several individuals, and the other (Fifth Circuit case no. 77-3256) against two individuals.
In case no. 77-3255, the plaintiff bank sought foreclosure of a mortgage on real property located in Walton County, Florida, given to secure two promissory notes executed and delivered by the corporate defendants in New Orleans on December 29, 1973 and April 25, 1974. The individual defendants guaranteed the notes. In case no. 77-3256, the plaintiff sought foreclosure on a separate Walton County parcel, mortgaged to secure a separate note executed and delivered in New Orleans on January 11, 1974 by Joseph F. and Johnnie Mae Morgan. According to the facts as stated by the Court of Appeals: "The notes in both cases were made payable at International City in New Orleans, and were secured by mortgages on real estate located in Walton County, Florida. The notes in case no. 77-3255 provided they should be construed according to the laws of the State of Louisiana." Id., 612 F.2d at 228.
The Federal Deposit Insurance Corporation was added as a plaintiff in both actions when it acceded to ownership of the bank's assets. The United States District Court consolidated the two cases.
The defendants-appellants raised the defense of usury. They alleged that the bank *1061 had charged them interest in excess of 25% per annum, which is criminally usurious in Florida and renders the entire obligation unenforceable in Florida courts. § 687.071(2), (7), Fla. Stat. (1973).[1] They asserted that the notes and mortgages were unenforceable because they were against public policy in Florida.
On motion of all parties for summary judgment, the district court held that the notes were to be governed by Louisiana law. Finding that in Louisiana there is no limit on the interest that may be charged a corporate borrower, the district court held for the plaintiffs in case no. 77-3255. The bank conceded that the interest charged the individual borrowers in case no. 77-3256 was usurious under Louisiana law and that this required forfeiture of the interest. The Court of Appeals framed the certified question as follows:
Are notes executed and payable in a state other than Florida, secured by a mortgage on Florida real estate, providing for interest legal where made, but usurious under Florida law, unenforceable in Florida courts due to Florida's usury statute, public policy or otherwise, where (a) the interest charged or paid exceeds 25 percent and (b) where the interest charged does not exceed 25 percent, but exceeds the maximum interest rate allowed by law?
612 F.2d at 229.
The certified question reflects that there has been no finding of fact as to what interest rates the obligations actually carried, since the Court of Appeals wants to know the consequences both in cases of usurious rates of interest and criminally usurious rates of interest. If the loan to the individual borrowers bore interest in excess of 10% but less than 25%, then the interest would be forfeited under Florida law. As noted above, the bank conceded that the loan was usurious under Louisiana law and that the consequence under that law was forfeiture of interest. If the interest was, as alleged by defendants-appellants, in excess of 25%, then the principal amount, still an enforceable obligation in Louisiana (we assume from the facts as stated by the Fifth Circuit), would be unenforceable in Florida.
With regard to the loans to the corporate borrowers, if the interest was more than 15% but less than 25%, then the interest would be forfeited under Florida law. If the interest was more than 25%, then the principal would be unenforceable as well. In Louisiana, there is no limit on the rate of interest that may be charged corporate borrowers.
Therefore, with regard to the individuals, we have a situation where under Florida law, either the debt is unenforceable or the interest must be forfeited, depending on what the interest rate actually was, while under Louisiana law the interest must be forfeited but the principal is enforceable. With regard to the corporate borrowers, under Florida law either the debt is unenforceable or the interest must be forfeited, depending on the actual interest rate. Under Louisiana law principal and interest are enforceable regardless of the interest rate.
Florida's established rule for choice of law governing the validity and interpretation of contracts looks to the law of the place of contracting and the law of the place of performance. E.g., Brown v. Case, 80 Fla. 703, 86 So. 684 (1920); Thompson v. Kyle, 39 Fla. 582, 23 So. 12 (1897); Perry v. Lewis, 6 Fla. 555 (1856).
"The general principle [adopted] by civilized nations is, that the nature, validity, and interpretation of contracts are to be governed by the laws of the country where the contracts are made or are to be performed, but the remedies are to be governed by the laws of the country where the suit is brought, or as it is compendiously expressed, by the lex fori.' 8 Peter's S.C.Rep. 361.
*1062 Perry v. Lewis, 6 Fla. at 560. In Thompson v. Kyle, the Court said:
The authorities are not entirely unanimous on this point, but we think the weight of them, supported by principle, sustains the proposition that a note executed and payable in one State, though secured by a mortgage on lands in another, will be governed as to the rate of interest it shall bear, by the laws of the former... .
39 Fla. at 596-97, 23 So. at 17.
The certified question asks whether Florida's legislation on usurious interest establishes a public policy that prevents the application of the traditional choice of law rules to these contracts executed and to be performed in Louisiana.
Under the traditional Florida choice of law rules for contracts cases, the law of Louisiana would apply, since both the place of execution and the place of performance of the agreements was Louisiana, and the parties expressed no intent that the law of any place other than Louisiana should apply. See Goodman v. Olsen, 305 So.2d 753 (Fla. 1974), cert. denied, 423 U.S. 839, 96 S.Ct. 68, 46 L.Ed.2d 58 (1975). This Court has recently observed, however, that the traditional test of place of execution and place of performance "is today of little practical value since these contacts are so easily manipulated in our mobile society." Continental Mortgage Investors v. Sailboat Key, Inc., 395 So.2d 507, 510 (Fla. 1981).
In Continental Mortgage Investors v. Sailboat Key, Inc., 354 So.2d 67 (Fla.3d DCA 1977), the district court of appeal held that Florida's usury law was applicable to a financing agreement between a Florida corporation and a Massachusetts business trust, even though the contract designated Massachusetts law as controlling, on the grounds that the agreement violated Florida's public policy regarding usurious contracts, Massachusetts had no real connection with the transaction, and the designation of Massachusetts law was a scheme to evade Florida's usury law. Appellants would have us reach similar conclusions regarding this case.
On review of the Continental Mortgage case by this Court, it was held that since (contrary to the conclusion reached by the district court of appeal) Massachusetts had a normal and reasonable relation to the contract, the designation of Massachusetts law would be enforced. The "public policy" against usury, we said, was not so strong as to overcome the policy in favor of giving effect to the expressed intentions of contracting parties, even though as a factual matter the designation may indeed have been motivated by a desire to "evade" Florida's usury law.
Although a few jurisdictions do attach such a public policy to their usury laws, it is generally held that usury laws are not so distinctive a part of a forum's public policy that a court, for public policy reasons, will not look to another jurisdiction's law which is sufficiently connected with the contract and will uphold the contract... . We do not think the mere fact that there exists in Florida a usury statute which prohibits certain interest rates establishes a strong public policy against such conduct in this state where interstate loans are concerned.
... .
Finding no real support in our case law for the use of a public policy exception under the circumstances, and in view of the pervasive exceptions to the usury laws and the actual operation of these laws, we are unable, particularly in the commercial setting of this case, to glean any overriding public policy against usury qua usury in a choice of law situation.
Continental Mortgage Investors v. Sailboat Key, Inc., 395 So.2d at 509-10.
Although the fact is not mentioned in the certified question, we observe from the opinion of the Court of Appeals that the notes in case no. 77-3255 contained a stipulation that Louisiana law would apply. Louisiana was not only the place of contracting and the place of performance, but was also the state of the lender's domicile. The borrowers travelled there in search of financing. Since the agreements had a normal and reasonable relation to Louisiana, *1063 the stipulation of Louisiana law as controlling should be honored, even if the parties' purpose in making it was to avoid the restrictive effects of Florida's usury law. Seeman v. Philadelphia Warehouse Co., 274 U.S. 403, 47 S.Ct. 626, 71 L.Ed. 1123 (1927); Continental Mortgage Investors v. Sailboat Key, Inc., 395 So.2d 507 (Fla. 1981).
The note in case no. 77-3256 did not contain a designation of controlling law. In a situation where, under the law of one state with a relation to the transaction, it is void, while under the law of the other state with a relation, the interest is forfeited but principal is an enforceable debt, the law construes the parties' intent to be that the latter law should apply. The law that partly invalidates the transaction is preferred over the law that wholly invalidates it, where both states have a normal and reasonable relation to the transaction. Seeman v. Philadelphia Warehouse Co.; Continental Mortgage Investors v. Sailboat Key, Inc.
In response to the certified question, then, we hold that notes executed and payable in Louisiana, secured by mortgages on Florida real property, providing for interest legal where made but usurious under Florida's statute, are enforceable in Florida courts, since the transactions had a normal and reasonable relation to Louisiana, and either the express or constructive intent of the parties was that Louisiana law should apply.
With this opinion as our answer to the certified question, we return the record of this cause to the United States Court of Appeals for the Fifth Circuit.
It is so ordered.
SUNDBERG, C.J., and ADKINS, OVERTON, ALDERMAN and McDONALD, JJ., concur.
NOTES
[1] Interest charged an individual on an obligation less than $500,000 in excess of 10%, or, on an obligation more than $500,000, in excess of 15%, is usurious and in such cases all interest is forfeited but the principal amount of the obligation is enforceable. Interest charged a corporation in excess of 15% is usurious and must be forfeited. §§ 687.02, 687.03, 687.04, Fla. Stat. (1973). There are numerous exceptions to these provisions.