468 So.2d 520 (1985)
TITLE & TRUST COMPANY OF FLORIDA, a Florida Corporation, Appellant,
v.
Nathan O. PARKER and Joyce T. Parker, Appellees.
No. AV-7.
District Court of Appeal of Florida, First District.
May 14, 1985.
*521 Delbridge L. Gibbs of Marks, Gray, Conroy & Gibbs, Jacksonville, for appellant.
James E. Cobb, Jack W. Shaw, Jr., Dennis R. Schutt of Mathews, Osborne, McNatt, Gobelman & Cobb, Jacksonville, for appellees.
SMITH, Judge.
Appellant Title & Trust Company of Florida (Title & Trust) appeals a final judgment granting the Parkers $175,000.00 in compensatory damages, $23,303.70 prejudgment interest, and $22,000.00 attorney's fees. The Parkers cross-appeal the amount of compensatory damages, contending the trial judge failed to apply the proper measure of damages. We affirm both the appeal and the cross-appeal.
The Parkers filed a complaint seeking damages from Title & Trust for an alleged breach of a commitment to provide title insurance covering a mortgage held by the Parkers on a parcel of real property located in Jacksonville, Florida. Initially, the trial court granted summary judgment against the Parkers on the issue of liability, finding that the Parkers' loss was excluded from coverage by the policy's "possession exception" clause. However, on appeal this court held that the "possession exception" clause found in the commitment issued by Title & Trust did not apply, Parker v. Title & Trust Company of Florida, 429 So.2d 1267 (Fla. 1st DCA 1983) (Parker I), and rendered partial summary judgment in favor of the Parkers on the issue of liability. Id. at 1269. The cause was then remanded for trial on the issue of damages, which resulted in the judgment appealed from.
The Parkers, residents of California, were approached in May 1980 by representatives of a California corporation known as EAC, Inc. (EAC), who proposed a loan from the Parkers to EAC. The loan, as contemplated, called for the Parkers' advancement of $200,000.00, with repayment to be made by EAC ninety days later in the amount of $305,000. As security for the loan, the Parkers received a mortgage on a parcel of real property in Jacksonville, Florida, which was allegedly owned by EAC. Although the loan was evidenced by a note with a stated principal of $305,000.00, and a per annum interest rate of eighteen percent (18%), the true principal involved was $200,000.00, of which amount only $175,000.00 was actually distributed to EAC.[1] According to the testimony of John Holl, an expert on mortgage valuations presented by Title and Trust, the actual interest rate *522 involved in the transaction was fifty-two percent (52%) per annum, and was in excess of two hundred percent (200%) for the ninety days.
Prior to distribution of the loan proceeds, the Parkers received a title insurance commitment covering the mortgaged Jacksonville property from Title & Trust. Subsequently, Title & Trust discovered that the deed under which EAC allegedly held title to the property was a forgery. The true owner of the property, Southeastern Aluminum Products, Inc., then instituted a quiet title action against the Parkers and EAC, resulting in a judgment declaring the purported interests of EAC and the Parkers in the property null and void. Title & Trust declined to defend the Parkers' putative interest in the Jacksonville property, having discovered the fraud during its investigation of the property title subsequent to issuance of the title insurance commitment. As a further result of the foregoing, Title & Trust refused to issue a title insurance policy covering the Jacksonville parcel. By the time Title & Trust gave notice to Mr. Parker of EAC's defective title, disbursement of the loan principal to the EAC officers had already been made.
Title and Trust raises essentially two points on appeal, both of which relate to Florida's usury statute, Section 687.071(3), (7), Florida Statutes (1981), under which the charging of in excess of forty-five percent (45%) per annum interest is a felony, and the debt is unenforceable in the courts of Florida. First, Title and Trust asserts that under the usury statute, the Parkers' note and mortgage were unenforceable; thus they sustained no "loss" under the policy when their mortgage interest in the Jacksonville property was declared null and void. Secondly, Title and Trust maintains that the trial judge committed reversible error by refusing to grant its motion to file a second amended affirmative defense based on usury, since no prejudice to the Parkers could have resulted from the granting of the amendment.
The Parkers, on cross-appeal, contend that they are entitled to $305,000.00 in damages, the amount stated in the title insurance commitment. After considering the briefs and oral arguments, we are satisfied that the trial judge here committed no reversible error.
Considering first Title & Trust's contention that the trial judge should have allowed it to file an amended answer raising the affirmative defense of usury, we find no abuse of the trial judge's abundant discretion. Rule 1.190(e), Florida Rules of Civil Procedure, provides in pertinent part:
At any time in furtherance of justice, upon such terms as may be just, the court may permit any process, proceeding, pleading, or record to be amended ...
While it is generally true that amendments are viewed favorably so as to assure the trial of cases on their merits, amendments are not allowed where they would "change the issue, introduce new issues, or materially vary the grounds of relief." International Patrol and Detective Agency Company, Inc. v. Aetna Casualty & Surety Company, 396 So.2d 774, 776 (Fla. 1st DCA 1981) (citations omitted), aff'd on other grounds, 419 So.2d 323 (Fla. 1982). This rule is especially applicable where the amendment is sought shortly before trial, since the liberality to be exercised in granting amendments diminishes as a case progresses to trial. Brown v. Montgomery Ward, 252 So.2d 817, 819 (Fla. 1st DCA 1971); Allett v. Hill, 422 So.2d 1047, 1049 (Fla. 4th DCA 1982); Price v. Morgan, 436 So.2d 1116, 1122 (Fla. 5th DCA 1983). Here, Title & Trust sought leave to amend two weeks prior to trial, in order to raise a new issue, usury. As a practical matter, prejudice to Title and Trust does not clearly appear, since Title & Trust was allowed, over objection, to introduce testimony concerning the usurious nature of the Parkers' loan transaction and the Parkers failed to appeal this evidentiary ruling to this court. Moreover, even were the Parkers' objection properly before this court, we would not be inclined to overrule the trial judge, as a court may, on its own motion, take notice of illegal contracts coming before it Citizens *523 Bank & Trust Co. v. Mabry, 102 Fla. 1084, 136 So. 714, 717 (1931), citing Escambia Land & Manufacturing Co. v. Ferry Pass Inspectors' & Shipper's Ass'n., 59 Fla. 239, 52 So. 715 (1910). Nevertheless, the proffered amendment would have effected at least a technical change in the issues to be tried, since the loan itself was made and was payable in California, so that we cannot say that the trial judge abused his discretion in denying the amendment. Chitty & Company v. Preston H. Haskell Company, 423 So.2d 460, 461 (Fla. 1st DCA 1982).
We find that Title and Trust's contention that the Parkers sustained no "loss," and the Parkers' contentions, regarding the amount of damages, implicate much the same legal and factual considerations. Both parties agree that the measure of damages in a suit on a mortgage title insurance policy is accurately set forth in Goode v. Federal Title and Insurance Corporation, 162 So.2d 269, 270 (Fla. 2d DCA 1964):
... the fundamental rule [is] that an insured is entitled to recover the actual loss or damage sustained from a defect, lien, or encumbrance affecting his title... . Broadly speaking, most of the cases in which the question has arisen have deemed a mortgagee's loss to be the difference between the value of the mortgage subject to the defect and what its value would have been had the defect not existed... .
Quoting Annot., 60 A.L.R.2d 972 (1958); see also Safeco Title Ins. Co. v. Reynolds, 452 So.2d 45, 47-48 (Fla. 2d DCA 1984).
The trial judge found the Parkers entitled to $175,000.00 in damages, rather than the face amount of the policy, $305,000, because "... that is the amount of their loss. And I think that if they got anything more, it would be speculative and contrary to the public policy and everything else." It is evident from this statement that the trial judge was troubled by the usurious nature of the underlying loan between the Parkers and EAC, and its impact on the damages they stood to receive on the title insurance commitment issued by Title & Trust. We are likewise troubled by the prospect that our disapproval of the trial judge's final judgment, limiting the Parkers' recovery to the actual damages sustained by them, might be construed by some as giving our stamp of approval to the Parkers' facially extortionate transaction. See Sections 687.071(3) and (7), Florida Statutes (1983).
The mere fact that the Parkers' loss was caused by a risk covered by the policy, see Parker I, supra, does not, as a matter of law, entitle them to recover the face amount of the policy. Florida Home Insurance Company v. Braverman, 163 So.2d 512 (Fla. 3d DCA 1964). Thus, they are not automatically entitled to damages of $305,000, representing the face amount of the policy, but rather they must prove their actual loss. In assessing the extent to which the Parkers met this burden, we think it is proper to consider the general principle that a party injured, whether by breach of contract or other wrongful act, is entitled to recover "a fair and just compensation commensurate with the loss sustained in consequence of the defendant's act which gave rise to the action." 17 Fla.Jur.2d, Damages, § 4. We believe that the trial judge properly resolved the difficult problem presented here by allowing recovery for the actual loss, but refusing to allow the Parkers' recovery for the usurious $105,000.00 interest on the $175,000.00 principal of their loan to EAC.
We find additional support for our holding in the general notion that courts have an "affirmative duty" to avoid allowing a party who violates public policy to receive any substantial benefits from his or her wrongdoing. Cooper v. Paris, 413 So.2d 772, 774 (Fla. 1st DCA 1982), citing Local No. 234 v. Henley & Beckwith, Inc., 66 So.2d 818 (Fla. 1953). Thus, as a general rule, if the enforcement of a contract is contrary to the public policy of the forum state, the contract need not be enforced, Davis v. Ebsco Industries, Inc., 150 So.2d 460, 463-464 (Fla. 3d DCA 1963); Auto Club Affiliates, Inc. v. Donahey, 281 So.2d 239, *524 243 (Fla. 2d DCA 1973), cert. den., 285 So.2d 28 (Fla. 1973). It is clear that Chapter 687, Florida Statutes, is a legislative declaration of a public policy against usury, as the statute contemplates both the forfeiture of usurious interest, Section 687.04, as well as the non-enforcement of a criminally usurious debt, Section 687.071(7).[2] Accordingly, it is appropriate for this court to refuse to give effect to the usurious elements of this contract, since to do so would violate the public policy of this state. Dept. of Motor Vehicles for Use and Benefit of Fifth Avenue Motors, Ltd. v. Mercedes-Benz of North America, Inc., 408 So.2d 627, 630 (Fla. 2d DCA 1981), Frye v. Taylor, 263 So.2d 835, 840 (Fla. 4th DCA 1972) (same). Where the contract contains a clause that is illegal, a court ought not to enforce the illegal term, as a contract cannot give validity to an otherwise illegal act. Brumby v. City of Clearwater, 108 Fla. 633, 149 So. 203 (1933); Nizzo v. Amoco Oil Co., 333 So.2d 491 (Fla. 3d DCA 1976). This rule is based on the rationale that there can exist no legal remedy for that which is itself illegal; D. & L. Harrod, Inc. v. U.S. Precast Corporation, 322 So.2d 630 (Fla. 3d DCA 1975); Gonzalez v. Trujillo, 179 So.2d 896 (Fla. 3d DCA 1965).
To summarize, we hold that it was not error for the trial court to consider the fact that the underlying loan transaction here involved criminal usurious activity as defined by Section 687.071(3), Florida Statutes (1981). Whether such considerations properly fit into the patchwork quilt of the law governing this particular kind of controversy is not by any means crystal clear. Our examination of the issues in this cause reveals no authority directly addressing the fact pattern confronting us. However, the trial judge believed such considerations appropriate, and we are not prepared to say otherwise, inasmuch as we are unable to articulate convincing reasons to the contrary. Accordingly, we find that the trial judge properly disallowed that portion of the damages predicated on the usurious interest rate from the total coverage afforded by the commitment issued by Title & Trust. Where a contract contains both legal and illegal terms and enforcement of the illegal terms can be refused without nullifying the contract's essential purpose, courts will give effect to those valid portions and ignore the illegal terms, New Products Corp. v. City of N. Miami, 241 So.2d 451 (Fla. 3d DCA 1970), cert. den., 244 So.2d 434 (Fla. 1971); Points v. Barnes, 301 So.2d 102, 104 (Fla. 4th DCA 1974), cert. den., 312 So.2d 751 (Fla. 1975).[3]
For the foregoing reasons, the judgment appealed from is AFFIRMED.
MILLS and NIMMONS, JJ., concur.
NOTES
[1] Mr. Parker testified that the remaining $25,000 was to be paid as a commission to brokers who negotiated the loan, but was never paid.
[2] This case is not controlled by Morgan Walton Properties v. International City Bank, 404 So.2d 1059 (Fla. 1981) or Continental Mortgage Investors v. Sailboat Key, Inc., 395 So.2d 507 (Fla. 1981). In those cases, the parties executed, in states other than Florida, notes that charged interest greater than the maximum rate allowed by Florida law. Those notes were secured by mortgages on Florida real property. The Florida Supreme Court held in Sailboat Key, and reaffirmed in Morgan Walton Properties, that Florida's public policy against usury was insufficient to overcome the express intention of contracting parties to make controlling the usury law of a foreign jurisdiction, even if this choice is motivated by a desire to avoid more stringent Florida law on the subject. Here, in contradistinction, the note executed by the Parkers in favor of EAC expresses on its face the intention of the parties that it be construed and enforced according to Florida law, and further requires the note to bear interest "at the highest rate allowable under the laws of the State of Florida." Hence, the Parkers have evidenced an intention to bring themselves within the public policy confines of Chapter 687, Florida Statutes (1981), rather than avoidance of its rigors, as was the case in Sailboat Key and Morgan Walton Properties.
[3] Alternatively, the same result can be reached on the theory that the Parkers' interest in receiving a usurious rate of interest from their loan transaction, which would subject them to a felony prosecution if consummated in Florida, is not an "insurable interest" within the meaning of Section 627.405(2), Florida Statutes (1981), which requires the interest to be "lawful." Cf. Hartford Life Insurance Co. v. Title Guarantee Co., 520 F.2d 1170, 1175 (D.C. Cir.1975) (provision in insurance contract voidable on public policy grounds where a party is a knowledgeable and intentional wrongdoer in seeking usurious interest payments in violation of the jurisdiction's Loan Sharking statute).