789 So.2d 405 (2001)
Robert H. HARRIS, The Earth's Harvest, Inc., and Nutrisupplies, Inc., successor in interest to the rights of Robert H. Harris and The Earth's Harvest, Inc., Appellants,
v.
Nicholas GONZALEZ, M.D., Nutricology, Inc., a foreign corporation, and Stephen A. Levine, Appellees.
No. 4D99-4197.
District Court of Appeal of Florida, Fourth District.
June 6, 2001.
Rehearing Denied August 1, 2001.
*406 Edna L. Caruso of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, and Jack Scarola of Searcy, Denney, Scarola, Barnhart & Shipley, P.A., West Palm Beach, for appellants.
William R. Bishin, Seattle, WA, and Eric C. Christu of Elk, Bankier, Palmer & Christu, Boca Raton, for Appellee Nicholas Gonzalez, M.D.
Rick Edwards of Rick Edwards, Inc., Los Angeles, CA, for appellees.
TAYLOR, J.
Plaintiffs Robert Harris, The Earth's Harvest, Inc. (EHI), and Nutrisupplies, Inc., appeal a summary judgment in favor of Defendants Nutricology, Inc. and Stephen A. Levine on their claims for tortious interference with their contract with Nicholas Gonzalez, M.D. They also appeal a partial summary judgment on the fraud count of their third amended complaint. The trial court granted summary judgment on the contract interference claims because it determined that the contract between Harris and Dr. Gonzalez violated Florida law and was void as against public policy. We affirm on all issues raised in this appeal, but specifically address the trial court's finding that the contract violated public policy.
Nicholas Gonzalez, M.D., is a New York physician, who restricts his practice to providing *407 nutritional therapy to patients suffering from degenerative diseases. His therapy requires patients to consume large, daily doses of nutritional supplements. Because the quality and ready availability of these supplements are essential components of Dr. Gonzalez's therapy, he has actively participated in designing, procuring, evaluating, and monitoring the supplements. From 1987 to 1995, Dr. Gonzalez relied on Nutricology, Inc., a California company, to provide his patients with these supplements. The company was operated by Steve A. Levine, who designed and sold the supplements as a wholesaler.
Robert Harris is a New York attorney. From 1989 through November of 1992, he represented Dr. Gonzalez in various matters involving Dr. Gonzalez's unorthodox treatment. In 1992, Harris proposed taking over the retail sale of supplements. Harris and Dr. Gonzalez entered into a contract in New York to custom design various formulas for sale to Dr. Gonzalez's patients. Pursuant to the contract, Harris was to incorporate EHI in Florida, provide the capital for the business's inventory and equipment, and operate the distribution business. Dr. Gonzalez was to act as a consultant to EHI for ten years. In that capacity, Dr. Gonzalez was to formulate products that were needed by his patients; refer his patients to EHI "as an option for their fulfillment of their supply needs and mak[e] referrals to no other source;" meet a few times a year with management; and review assays of products to assure quality control. In return, Dr. Gonzalez was to receive 50 percent of EHI's net profit.
In May 1992 EHI began selling nutritional dietary supplements to customers in and out of Florida in response to telephone and mail orders. As agreed, Dr. Gonzalez referred his patients to EHI. However, six months after entering into the contract with Harris, Dr. Gonzalez terminated the agreement and discharged Harris as his attorney. Dr. Gonzalez claimed that EHI and Harris violated the agreement by improperly filling his patients' orders, abusing the patients, substituting cheaper unproven supplements, and raising prices to unacceptable levels. Dr. Gonzalez then began referring his patients to Nutricology for their nutritional dietary supplements.
The plaintiffs sued Nutricology, and its director and managing agent, Steven A. Levine, for tortious interference, alleging that they contacted Dr. Gonzalez and offered him financial inducements to refer his patients directly to Nutricology and bypass EHI, the "middleman." Harris claimed that, as a result, Dr. Gonzalez breached his contract with EHI.
In response to plaintiffs' tortious interference claims against Levine and Nutricology, the defendants raised an affirmative defense that Harris' contract with Dr. Gonzalez was illegal and void. In their motion for summary judgment, the defendants argued that the contract between Harris and Dr. Gonzalez was unenforceable in this state. After a hearing on the motion, the trial court granted summary judgment in favor of Levine and Nutricology.
We agree with the trial court's ultimate conclusion that "this contract establishes a commercial relationship that is banned by the law and public policy of the State of Florida." As appellants point out, section 455.654,[1] Florida Statutes, which the court found the contract violated, did not become effective until July 1, 1992, *408 after the contract was executed. However, there are other Florida statutes which render this contract violative of public policy when it was executed. Curtis v. State, 748 So.2d 370, 372 (Fla. 4th DCA 2000)(even where trial court's stated reasons are erroneous, appellate court will affirm if the result is correct but for the wrong reason). These statutes express legislative sentiments that the public is best served by physician referrals uninfluenced by financial considerations.
Section 455.201, Florida Statutes (1991) provided:
(2) The Legislature further believes that such professions shall be regulated only for the preservation of the health, safety, and welfare of the public under the police powers of the state. Such professions shall be regulated when:
(a) Their unregulated practice can harm or endanger the health, safety, and welfare of the public and when the potential for such harm is recognizable and clearly outweighs any anticompetitive impact which may result from licensing.
The statutes that specifically regulate the practice of medicine also provide guidance on this issue. Section 458.331, Florida Statutes (1991),[2] enumerates grounds for disciplinary action against a physician. Subsection (1)(i)states:
Paying or receiving any commission, bonus, kickback, or rebate, or engaging in any split-fee arrangement in any form whatsoever with a physician, organization, agency, or person, either directly or indirectly, for patients referred to providers of health care goods and services, including, but not limited to, hospitals, nursing homes, clinical laboratories, ambulatory surgical homes, clinical laboratories, ambulatory surgical centers, or pharmacies. The provisions of this paragraph shall not be construed to prevent a physician from receiving a fee for professional consultation services.
Subsection (gg)[3] provided, as additional grounds for disciplinary action:
Referring any patient, for health care goods or services, to a partnership, firm, corporation, or other business entity in which the physician or the physician's employer has an equity interest of 10 percent or more unless, prior to such referral, the physician notifies the patient of his financial interest and of the patient's right to obtain such goods or services at the location of the patient's choice.
Chapter 92-178, Laws of Florida, created the "Patient Self-Referral Act of 1992," repealing certain provisions relating to a physician's business dealings in relation to his or her patients, and codifying an act to specifically address this issue. This Act is now codified in section 456.053, Florida Statutes (2000).[4] As part of the Act, the Legislature enacted a statute that prohibited kickbacks, which became effective April 8, 1992, a month before the contract herein was executed. Section 455.237, Florida Statutes, (Supp.1992),[5] provides:

*409 (1) As used in this section, the term "kickback" means a remuneration or payment back pursuant to an investment interest, compensation arrangement, or otherwise, by a provider of health care services or items, of a portion of the charges for services rendered to a referring health care provider as an incentive or inducement to refer patients for future services or items, when the payment is not tax deductible as an ordinary and necessary expense.
(2) It is unlawful for any health care provider or any provider of health care services to offer, pay, solicit, or receive a kickback, directly or indirectly, overtly or covertly, in cash or in kind, for referring or soliciting patients.
Although it is true that Florida cannot apply its public policy and statutes to a foreign contract to void its operation elsewhere, it can hold such a contract void or unenforceable here if said contract is repugnant to the public policy of this state. Cerniglia v. C & D Farms, Inc., 203 So.2d 1, 2 (Fla.1967); Title & Trust Co. of Fla. v. Parker, 468 So.2d 520, 523 (Fla. 1st DCA 1985)("[A]s a general rule, if the enforcement of a contract is contrary to the public policy of the forum state, the contract need not be enforced."). A contract which violates a provision of the constitution or a statute is void and illegal, and, will not be enforced in our courts. "Where the parties to such an agreement are in pari delicto the law will leave them where it finds them; relief will be refused in the courts because of public interest." Local No. 234 v. Henley, 66 So.2d 818, 821 (Fla. 1953).
The term "public policy" is not easily defined. "In substance, it may be said to be the community common sense and common conscience, extended and applied throughout the state to matters of public morals, public health, public safety, public welfare, and the like." City of Leesburg v. Ware, 113 Fla. 760, 153 So. 87, 89 (1934); Neiman v. Galloway, 704 So.2d 1131 (Fla. 4th DCA 1998)(quoting Edwards v. Miami Transit Co., 150 Fla. 315, 7 So.2d 440, 442 (1942)(quoting Atlantic Coast Line R. Co. v. Beazley, 54 Fla. 311, 45 So. 761 (1907)))(`[A] contract is not void, as against public policy, unless it is injurious to the interest of the public, or contravenes some established interest in society.'). The Harris/Gonzalez contract violates public policy because Dr. Gonzalez promised to refer his patients to EHI exclusively in return for fifty percent of the net corporate profits. This is precisely the type of financial incentive for a health care provider that the legislature determined is harmful to the public's safety and welfare.
Accordingly, we affirm the trial court's ruling that, as a matter of law, the subject contract is void as violative of Florida law and public policy and, thus, confers no enforceable rights on appellants based upon it.
AFFIRMED.
DELL and STEVENSON, JJ., concur.
NOTES
[1] This statute was renumbered as section 456.053, Florida Statutes. Ch. 00-160, § 77, Laws of Fla.
[2] The current version of section 458.331(1)(i) retains the same language as the 1991 version of the statute. See § 458.331(1)(i), Fla. Stat. (2000).
[3] This subsection was subsequently repealed. Ch. 92-178, Laws of Fla.
[4] Previously section 455.654. Ch. 00-160, § 77, Laws of Fla..
[5] The current version of this statute is section 456.054, Florida Statutes (2000), and it contains the following additional subsection:

(3) Violations of this section shall be considered patient brokering and shall be punishable as provided in s. 817.505.