MARY F. OBER, administratrix, *vs.* NATIONAL CASUALTY COMPANY.

Suffolk.   February 5, 1945. — March 5, 1945.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & SPALDING, JJ.

Theatre.   Club.   Insurance, Construction of policy, Accident insurance. Contract, Construction.   Practice, Civil, Question of law or fact.   Words, "Theatre."

Upon the hearing of a motion by the defendant for a directed verdict, presented at the close of the plaintiff's opening at the trial of an action upon an unambiguous policy of insurance, where by agreement of the parties the policy was "admitted in evidence" and there was no dis-

pute as to the facts which should be applied to the terms of the policy, the interpretation of the policy in the light of those facts was a question of law for the judge.

There was nothing ambiguous or uncertain about the word "theatre" as used in a policy of insurance providing for a payment in case of loss of life "by the burning of any church, theatre, library, school or municipal administration building"; it was to be construed in its ordinary sense of a building especially adapted to dramatic, operatic or spectacular representations, and did not include a restaurant or night club.

An establishment in Boston, operating under a victualler's license authorizing the sale of food, a license permitting it to serve alcoholic liquor and a license referred to as an entertainment license, exacting no admission charge, and furnishing entertainment by "shows" as an incident to its main business of serving food and other refreshments, was a restaurant or so called night club, and not a theatre.

CONTRACT. Writ in the Superior Court dated December 21, 1942.

The case was tried before *Morton, J.* The record states: "At the conclusion of the plaintiff's opening, the defendant made a motion in writing for a directed verdict, on the pleadings, the opening, and upon all the evidence. By agreement of the parties, the insurance policy, which was referred to in the plaintiff's opening, was admitted in evidence and marked Exhibit 1. Thereupon the court directed the jury to return a verdict for the defendant, and the verdict so returned was entered."

*D. A. Lynch,* for the plaintiff.

*H. Loewenberg,* for the defendant.

DOLAN, J. This is an action of contract upon an insurance policy issued by the defendant to recover for the death of the plaintiff's intestate, Douglass J. Ober. At the conclusion of the plaintiff's opening the defendant moved for a directed verdict. Thereupon the policy of insurance was admitted in evidence, and the judge directed the jury to return a verdict for the defendant. The plaintiff duly excepted to that action.

The terms of the policy provide, so far as here material, for the payment of $2,000 in case of loss of life by "the burning of any church, theatre, library, school or municipal administration building in which the insured shall be at the beginning of such fire, and is burned by such fire or suffo-

cated by the smoke therefrom." In her opening the plaintiff offered to prove that the intestate died as a result of "Flame burns. Accident. Burned in Conflagration," while a patron of Cocoanut Grove [1] on November 28, 1942. The sole issue for determination is whether Cocoanut Grove was a theatre within the meaning of the policy of insurance, and whether that question should have been submitted to the jury. Statements of expected proof in the plaintiff's opening were in substance as follows: Cocoanut Grove operated under three licenses issued by the Boston licensing board, (1) a victualler's license authorizing the sale of food, (2) a license permitting it to serve liquor, and (3) a license referred to by the board as an entertainment license. The application for the entertainment license described the stage and the character of entertainment as "All types of entertainment, dancing, singing, music." Under the titles "Where to dine" and "Night Spots" Cocoanut Grove advertised "practically daily" in Boston newspapers ". . . and his orchestra. Two floor shows nightly, 7:45 and 11:30. Price of dinner $1.50." The basis of the show was "a line of girls" who appeared on the stage four or five times in different costumes and went through various routines. A band leader acted as master of ceremonies. A tenor sang nightly at all the shows. At various times certain actors and actresses and parts of theatrical casts appeared in the shows. On November 26, 1942, two days before the fire, Cocoanut Grove advertised "Cocoanut Grove guest stars and an all star floor show." In her opening the plaintiff described the physical arrangement of Cocoanut Grove, reading the description thereof set forth in *Commonwealth* v. *Welansky*, 316 Mass. 383, 387–389, from which it appears that the main dining room with an area of three thousand seven hundred sixty-five square feet contained a dancing space of six hundred sixty square feet and a stage behind with an area of four hundred thirty-six square feet.

The action of the judge in directing the jury to return a verdict for the defendant was right. In our opinion there

---

[1] "New Cocoanut Grove, Inc." See *Commonwealth* v. *Welansky*, 316 Mass. 383, 386.

is nothing ambiguous or uncertain about the meaning of the word theatre as used in the contract, and no question with respect to its meaning was presented for the jury. It is settled with respect to contracts in writing that it is only where more than one view can be taken of the evidence respecting the circumstances of the parties and the condition of the subject with which they are dealing that a proper case arises for the jury, and that where, as here, there is no dispute as to the facts to be applied to the terms of the contract the interpretation of the contract in their light still is to be treated as a question of law for the judge. *Atwood* v. *Boston,* 310 Mass. 70, 75, and cases cited. *Whittaker* v. *Brookline, ante,* 19, 23. In the construction of contracts in writing words that are plain and free from ambiguity must be construed in their usual and ordinary sense. *Morse* v. *Boston,* 260 Mass. 255, 262. *Levin* v. *Century Indemnity Co.* 279 Mass. 256, 258. G. L. (Ter. Ed.) c. 4, § 6, Third. The word theatre is to be construed as it is understood by ordinary men. *McHugh* v. *New England Mutual Life Ins. Co.* 317 Mass. 498, 500. In our opinion ordinary men would not give to a word in such common use a meaning that would bring within its compass restaurants or so called night clubs where no admission is charged, but where free entertainment is furnished in connection with the serving of food or other refreshments. The primary and common meaning of the word theatre does not include such a resort. In its ordinary sense the word imports "a building especially adapted to dramatic, operatic or spectacular representations, a play house . . . room, hall, or other place . . . so arranged that a body of spectators can have an unobstructed view of the platform." *People* v. *Keller,* 96 Misc. (N. Y.) 92, 100. *Bell* v. *Mahn,* 121 Penn. St. 225. *Gould* v. *State,* 66 Tex. Cr. 122, 133. *Asa G. Candler Inc.* v. *Georgia Theatre Co.* 148 Ga. 188, 191. *State* v. *Penny,* 42 Mont. 118, 123. See Bouvier's Law Dictionary (3d Rev.) 3265; Black's Law Dictionary (3d. ed.) 1724. A theatre has been defined to be an edifice used for dramatic, operatic or other performances for admission to which entrance money is received. *Central Amusement Co.* v. *VanNostran,* 85 Ind. App. 476.

And in *People* v. *Keller*, 96 Misc. (N. Y.) 92, it was held that a restaurant which induced patronage of its main business of serving food by furnishing entertainment was not a theatre.

There is nothing in the contract of insurance in question, read and interpreted as a whole so as to give effect to its general purpose (*Wit* v. *Commercial Hotel Co.* 253 Mass. 564, 572; *Palumbo* v. *Metropolitan Life Ins. Co.* 296 Mass. 358), to warrant a conclusion that the word theatre is used therein in any other than its ordinary meaning. The provision of the contract in question classifying a theatre with churches, libraries, schools or municipal administration buildings, all edifices where large assemblages of persons collect for the purposes to which such structures are dedicated, is not without significance.

We conclude that the entertainment that was furnished to its patrons by Cocoanut Grove was merely incidental to its main business of furnishing food and other refreshments, and that it was a restaurant, a so called night club, *Commonwealth* v. *Welansky*, 316 Mass. 383, and was not a theatre.

*Exceptions overruled.*