853 F.2d 11
 DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, (Ethel H. Cain,
Claimant), Petitioner,
v.
BATH IRON WORKS CORPORATION and Commercial Union Insurance
Company, Respondents.
 No. 87-1920.
 United States Court of Appeals,
First Circuit.
 Heard June 7, 1988.
Decided July 28, 1988.
 
 Joshua T. Gillelan II, Office of the Solicitor, with whom George R. Salem, Sol. of Labor, Donald S. Shire, Associate Sol., and J. Michael O'Neill, Washington, D.C., Counsel for Longshore, were on brief for petitioner.
 Stephen Hessert with whom Robert W. Bower, Jr., and Norman, Hanson & DeTroy, Portland, Me., were on brief for respondents.
 Before BOWNES, TORRUELLA and SELYA, Circuit Judges.
 SELYA, Circuit Judge.
 
 
 1
 This proceeding arises under the Longshore and Harbor Workers' Compensation Act, as amended, 33 U.S.C. Secs. 901-950 (1982 & Supp. II 1984) ("LHWCA" or "the Act"), and more specifically, under that section of the Act which authorizes the courts of appeal to review "final order[s]" of the Benefits Review Board ("Board"). See id. at Sec. 921(c).[1] But the instant petition, like a fish that has not yet grown to the legal minimum, has been prematurely netted in appellate waters. We explain briefly why we throw this undersized specimen overboard.
 
 I.
 
 2
 We note at the outset that there are two respondents, Bath Iron Works, a Maine corporation, and Commercial Union Insurance Companies, Bath's insurer. Inasmuch as the interests of the two are virtually identical, we will refer to them interchangeably. In March 1971, during the currency of the policy, one Robert Cain became permanently and totally disabled. (Cain, a pipe coverer at the Iron Works, had contracted an incapacitating lung disease in the course of his employment.) Commercial Union voluntarily initiated disability payments under the Act.
 
 
 3
 Cain's average weekly wage (AWW) when injured was substantial, but his compensation payments were limited by the statutory ceiling to $70 per week. See Pub.L. No. 87-87, 75 Stat. 203 (1961). On November 26, 1972, however, the LHWCA Amendments of 1972, Pub.L. No. 92-576, 86 Stat. 1251 (Oct. 27, 1972), took effect. Thereunder, Cain's disability payments were augmented (half of the supplement being payable from federal appropriations and half from an industry-financed "special fund" created by the Amendments, see 33 U.S.C. Sec. 944 (1982)),[2] so as to bring weekly benefits up to two-thirds of the national AWW. See 33 U.S.C. Sec. 910(h)(1) (1982). The federal Office of Workers' Compensation Programs ("OWCP") directed Commercial Union to make the initial adjustment contemplated by the statute, id., and to hike Cain's benefits annually to keep pace with inflationary increases in the national AWW. See 33 U.S.C. Sec. 910(f) (1982). Pursuant to instructions received from OWCP, the insurer paid both the one-time initial adjustment and the yearly cost-of-living adjustments, and was periodically reimbursed from federal sources for all such sums. See 33 U.S.C. Sec. 910(h)(2); 20 C.F.R. Sec. 702.145(a).
 
 
 4
 Matters proceeded swimmingly during Cain's lifetime and, for a time, after his demise in February 1975. Although no written payment order was issued at that time, the petitioner evidently told the insurer, in substance, that, because the 1972 LHWCA Amendments increased the maximum death benefit which had been in effect when Cain became disabled, federal sources would be responsible for the difference between it and the death benefit in effect in 1975. The insurer then began paying Cain's widow at the higher (date-of-death) rate and sought reimbursement for the supplementary portion of the payments (including both the initial adjustment, 33 U.S.C. Sec. 910(h), and the annual adjustments, 33 U.S.C. Sec. 910(f)). OWCP routinely obliged for over six years.
 
 
 5
 In September 1981, the skein was suddenly snapped. Petitioner asserted--apparently for the first time--that Commercial Union should bear the brunt of paying benefits at the 1975 rate, and was not entitled to limit its net liability to the pre-1972 rate. In fine, petitioner had reversed its field and had come belatedly to contend that the law in effect at the time of death governed an employer's responsibility for funding death benefits where, as in this case, the injury preceded the 1972 LHWCA Amendments, but the death came afterward. If this were so, then federal sources could be tapped only to reimburse annual cost-of-living adjustments in a case like Cain's, not to reimburse the employer for any part of the date-of-death benefit rate.
 
 
 6
 The dispute ripened into litigation. It was referred to an administrative law judge (ALJ), see 33 U.S.C. Sec. 919(c), (d), who sustained the employer's position that federal sources, under 33 U.S.C. Sec. 910(h)(2), were responsible not only for subsidizing annual adjustments under Sec. 910(h)(3), but also for subsidizing the initial adjustment, that is, providing the extra funds necessary to bring the date-of-injury rate up to the date-of-death rate. OWCP appealed to the Board, see 33 U.S.C. Sec. 921(b)(3), which affirmed in pertinent part, but vacated the actual adjustments, seeing a need for refiguring. Cain v. Bath Iron Works Corp. BRB No. 84-761A (Aug. 31, 1987). The Board concluded its discussion by remanding the case to the ALJ for "further proceedings consistent with [its] opinion." OWCP then petitioned for judicial review.
 
 II.
 
 7
 The legal conundrum which underlies this proceeding is an intriguing one,[3] yet we must pause before coming to grips with it. Respondents urge that we lack jurisdiction to review the Board's order in the present posture of the case. If that contention is well founded, we can venture no further. No matter how tantalizing a problem may be, a federal appellate court cannot scratch intellectual itches unless it has jurisdiction to reach them. And in this instance, we are persuaded that jurisdictional constraints foreclose us from inquiring, here and now, into the merits.
 
 
 8
 This petition arises under, and depends for its jurisdictional nexus upon, 33 U.S.C. Sec. 921(c), quoted supra note 1. The availability of judicial review thereunder is limited to "final order[s]" of the Board. See id. This requirement mirrors exactly the concerns which underbrace 28 U.S.C. Sec. 1291, the statute which, in general, restricts appellate review of interlocutory orders. See National Steel and Shipbuilding Co. v. Director, OWCP, 626 F.2d 106, 107-08 (9th Cir.1980); Newport News Shipbuilding and Dry Dock Co. v. Director, OWCP, 590 F.2d 1267, 1268 (4th Cir.1978) (per curiam). Avoidance of the mischief of multiple appeals in a single litigation ranks high on the list; so does, in a case such as this, the desirability of minimizing disruption of the administrative process. In a slightly different setting, we have recently warned of the dangers of leaving "the way clear for the four horsemen of too easily available piecemeal appellate review: congestion, duplication, delay, and added expense." Spiegel v. Trustees of Tufts College, 843 F.2d 38, 46 (1st Cir.1988). In our judgment, to construe section 921(c) as conferring jurisdiction to hear an appeal from a nonfinal remand order would, on the face of things, give the four horsemen unbridled license to roam and countervail the prudential policies on which the finality principle rests. We explain briefly.
 
 
 9
 In general, "it has been a marked characteristic of the federal judicial system not to permit an appeal until a litigation has been concluded in the court of first instance." Radio Station WOW, Inc. v. Johnson, 326 U.S. 120, 123, 65 S.Ct. 1475, 1478, 89 L.Ed. 2092 (1945). Thus, an order or judgment is usually considered "final" (hence, appealable) only when it "resolv[es] the contested matter, leaving nothing to be done except execution of the judgment." United States v. Metropolitan Dist. Comm'n, 847 F.2d 12, 14 (1st Cir.1988). See also Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 373, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981); Coopers & Lybrand v. Livesay, 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978); Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed.2d 911 (1945).[4] "A corollary rule is that an order remanding a matter to an administrative agency for further findings and proceedings is not final." Cabot Corp. v. United States, 788 F.2d 1539, 1542 (Fed.Cir.1986); accord Memorial Hosp. System v. Heckler, 769 F.2d 1043, 1044 (5th Cir.1985); Pauls v. Secretary of the Air Force, 457 F.2d 294, 297-98 (1st Cir.1972); United Transportation Union v. Illinois Central R. Co., 433 F.2d 566, 568 (7th Cir.1970), cert. denied, 402 U.S. 915, 91 S.Ct. 1374, 28 L.Ed.2d 661 (1971). By logical extension, this "corollary rule" would seem apposite here. Accord Cooper Stevedoring Co. v. Director, OWCP, 826 F.2d 1011, 1014 (11th Cir.1987) (per curiam) ("remand of a LHWCA claim to an ALJ for further findings of fact is not an appealable order"); United Fruit Co. v. Director, OWCP, 546 F.2d 1224, 1225 (5th Cir.1977) (similar). See also Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 71, 91 S.Ct. 203, 209, 27 L.Ed.2d 203 (1970) (under Administrative Procedure Act, a relevant consideration in determining finality is whether "the process of administrative decisionmaking has reached a stage where judicial review will not disrupt the orderly process of adjudication"). Because the Board did not purport definitively to resolve the controversy between the parties, but instead remanded to the ALJ for further proceedings, the present order did not close out the case. No legal consequences flowed directly and inexorably from it. To the contrary, the order contemplated that something further needed to be done.
 
 
 10
 That "something," OWCP tells us, is insubstantial. The usual rule should not apply in this case because remand, though ordered, involves only "a purely ministerial arithmetic function." Petitioner's Reply Brief at 8. As a practical matter, petitioner asseverates, the Board's order has disposed of the core controversy and is, to all intents and purposes, final in substance if not in form. Having carefully combed the record, however, we do not share petitioner's optimistic view. On the contrary, we believe that OWCP in this instance seeks to undermine the finality principle rather than to imbue it with a sense of practicality.
 
 
 11
 To be sure, a concept like that of finality should not be hedged in by hypertechnical hairsplitting. In other contexts, the Supreme Court has counselled use of a "pragmatic approach ... in determining finality." Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 486, 95 S.Ct. 1029, 1042, 43 L.Ed.2d 328 (1975). See also Cohen, 337 U.S. at 546, 69 S.Ct. at 1225 (finality requirement under Sec. 1291 should be given a "practical rather than a technical construction"); Appeal of Licht & Semonoff, 796 F.2d 564, 569-70 (1st Cir.1986) (same); cf. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 171, 94 S.Ct. 2140, 2149, 40 L.Ed.2d 732 (1974) (inquiry into finality requires "some evaluation of ... competing considerations," balancing disadvantages inherent in piecemeal review against danger of denying justice by delay). Yet merely saying that it would be "practical" to hear an appeal at an earlier time does not make it so. The kind of practical consideration which would warrant a departure from so well settled a principle requires, at the least, some specialized showing of out-of-the-ordinary circumstances. These might include, say, a demonstration that what remained to be done was self-executing, or that cognizable harm of an unusual sort would result from delay, or that blind adherence to the letter of the finality principle would work some great injustice or grave systemic diseconomy. A petitioner, we think, has the burden of making the specialized showing needed to complete the arduous climb over the jurisdictional threshold. This record is inadequate to the task.
 
 
 12
 First, it is not at all clear that the computation of benefits is as cut and dried as OWCP would have us believe. The level of benefits likely depends to some extent on the AWW which the ALJ selects as applicable. The employer has raised a plausible question in this regard. See Respondents' Brief at 7-11. Cain's widow--who is not a party to this proceeding--is entitled to be heard on that issue. On the exiguous record before us, we are unprepared to say that the ALJ's remaining role is purely mechanical, or that the Board's decision, as it stands, is self-executing.[5]
 
 
 13
 In the second place, even though the aim of the remand order is merely to ensure an appropriate recalculation of benefits, that, in and of itself, seems insufficient reason to ditch the finality principle. A remand for determination of LHWCA benefits is typically thought nonfinal (hence, not immediately appealable). See, e.g., Washington Metropolitan Area Transit Authority v. Director, OWCP, 824 F.2d 94, 95-96 (D.C.Cir.1987) (per curiam); Freeman United Coal Mining Co. v. Director, OWCP, 721 F.2d 629, 630-32 (7th Cir.1983); see also Badger-Powhatan v. United States, 808 F.2d 823, 825-26 (Fed.Cir.1986) (remand to International Trade Administration for recalculation of antidumping charges held nonfinal). Such a rule--treating "liability" and "damages" as impartible for finality purposes, and requiring appellate review to await plenary disposition of the entire controversy--has been honored time and again in analogous contexts. See, e.g., Liberty Mutual Ins. Co. v. Wetzel, 424 U.S. 737, 744, 96 S.Ct. 1202, 1206, 47 L.Ed.2d 435 (1976) (order resolving liability but not fixing amount of damages nonfinal for purposes of 28 U.S.C. Sec. 1291); California National Bank v. Stateler, 171 U.S. 447, 448-49, 19 S.Ct. 6, 6-7, 43 L.Ed. 233 (1898) (writ of error dismissed because when a tribunal "makes a decree fixing the liability and rights of the parties, and refers the case to a master or subordinate court for a judicial purpose, such, for instance, as a statement of account ..., the decree is not final") (citations omitted); Becton Dickinson & Co. v. District 65, United Automobile, etc. Workers, 799 F.2d 57, 61-62 (3d Cir.1986) (order awarding attorneys' fees, but not setting amount, nonfinal, accordingly, not immediately appealable); Director, OWCP v. Brodka, 643 F.2d 159, 160-62 (3d Cir.1981) (similar); Mekdeci v. Merrell National Laboratories, 711 F.2d 1510, 1523 (11th Cir.1983) (order awarding costs under Fed.R.Civ.P. 54(d) not an appealable final judgment absent determination of amount); cf. Spiegel v. Trustees of Tufts College, 843 F.2d at 42-43 (discussing finality requirement under Fed.R.Civ.P. 54(b)).
 
 
 14
 Third and last, this case presents no special circumstances, no practical reasons, for elongating the reach of our jurisdiction. This is not a case where delay in review threatens to work a denial of justice. Cf. Ringsby Truck Lines, Inc. v. United States, 490 F.2d 620, 624 (10th Cir.1973) (although remand to agency usually nonfinal, appeal would be heard where refusal of jurisdiction "would effectively signal the end of appellant's cause of action without any judicial review"), cert. denied, 419 U.S. 833, 95 S.Ct. 59, 42 L.Ed.2d 59 (1974); Gold v. Weinberger, 473 F.2d 1376, 1378 (5th Cir.1973) (remand order appealable because, unless appeal permitted, party would "never be able to reach the questions involved"); compare Mitchell v. Forsyth, 472 U.S. 511, 525-26, 105 S.Ct. 2806, 2814-16, 86 L.Ed.2d 411 (1985) (denial of qualified immunity effectively unreviewable on appeal from final judgment, hence, within collateral order exception under Sec. 1291). In this case, there is no reason to believe that, whatever the outcome on remand, any irreparable loss of rights will eventuate. Rather, at the end of the line, any party aggrieved by the final order will be able to obtain meaningful review of all the pertinent issues.
 
 
 15
 Nor is there any overriding systemic reason for advancing the time of review. By way of illustration, we have no basis for suspecting that immediate reversal of the Board's merits decision would work some grand economy by precluding further proceedings before the ALJ. The opposite appears true: whatever the resolution on the merits, the benefit levels and rates applicable to the widow's claim must still be determined. The instant petition does not concern heirs' entitlement to benefits, but only the location of the pocket from which benefits are to be paid. Then, too, from a systemic viewpoint, it seems wise to accord some deference to the Board's decision that remand is a necessary adjunct to the administrative process in this case. See supra note 5. We are loath to flirt with potential disruption of that process without some good cause.III.
 
 
 16
 The "final order" rule is designed, by and large, to maintain a "one case, one appeal" paradigm. One of its hallmarks is ease of application--orders are final or they are not--and petitioner's invitation that we discard this bright-line rule in favor of a case-by-case analysis, in search of some supposed administrative efficacy, is not at all an attractive alternative. The prospect is, in several senses of the word, unappealing. As the Court has taught, the finality principle is "crucial to the efficient administration of justice." Flanagan v. United States, 465 U.S. 259, 264, 104 S.Ct. 1051, 1054, 79 L.Ed.2d 288 (1984). We should not rush to deviate from it, nor should we do so lightly.
 
 
 17
 We hold that an order remanding a LHWCA claim to an ALJ for further findings is not, in general, immediately appealable under 33 U.S.C. Sec. 921(c). Exceptions to this manifestation of the finality principle may be warranted, but the papers in this case do not justify any such departure. The petitioner has wholly failed to make the sort of specialized showing needed to catalyze a more freewheeling approach to the idea of finality. Insofar as we can tell, there is no reason to bend the rule in the circumstances of this case. Cf. Spiegel, 843 F.2d at 45-46 (less incentive to strain to invoke Rule 54(b) where no "pressing, exceptional need for immediate appellate intervention or grave injustice ... remediable only by allowing an appeal to be taken forthwith, or dire hardship").
 
 
 18
 We need go no further. This fish simply does not meet the minimum measure. Petitioner asks that we review a nonfinal remand order and twist the tape of 33 U.S.C. Sec. 921(c) to condone the attempt. But we cannot render what is short, long, by fishmongering alone; and we will not be stampeded into doing so merely because the OWCP--after six years of meekly reimbursing the respondents for augmented death benefits--now seems in a hurry to resolve the underlying question of statutory interpretation. There is neither warrant nor reason for us to cast so hastily in poorly charted seas.
 
 
 19
 The petition for review is dismissed without prejudice for want of appellate jurisdiction.
 
 
 
 [1]
 The statute provides in pertinent part that:
 Any person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred, by filing in such court within sixty days following the issuance of such Board order a written petition praying that the order be modified or set aside.
 33 U.S.C. Sec. 921(c) (1982).
 
 
 [2]
 This proceeding does not require us to delve into the differences between these funding modalities. For our purposes, we lump the two halves together and refer to payments from either general federal appropriations or from the special fund as being from "federal sources."
 
 
 [3]
 The basic question of statutory interpretation--whether the LHWCA special fund created by section 944, on the one hand, or the employer, on the other hand, should subsidize the increased death benefits due to the family of a worker who was totally, permanently disabled before the effective date of the 1972 LHWCA Amendments, but who did not die until after the effective date--was one of novel impression when this case was argued. Since then, the same question has been addressed by a divided panel of the Sixth Circuit. Director, OWCP v. Detroit Harbor Terminals, Inc., 850 F.2d 283 (6th Cir.1988). For the reasons explicated in the text, we do not reach the merits and take no view of the underlying issue. The reader with a thirst for greater insight into the statutory scheme, however, may wish to examine the detailed discussion contained in Part I of Chief Judge Engel's majority opinion. Id. at 2-6 & nn. 1-5
 
 
 [4]
 To be sure, certain decrees, though not final in the conventional sense, may fall within the "collateral order" exception to the finality rule, thus permitting the assumption of jurisdiction. See Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 545-47, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); see also Boreri v. Fiat S.P.A., 763 F.2d 17, 21-22 (1st Cir.1985) (discussing parameters of Cohen exception). The caselaw seems consentient, however, that remand orders of the sort involved here fail to meet the Cohen criteria. See, e.g., Washington Metropolitan Area Transit Authority v. Director, OWCP, 824 F.2d 94, 95-96 (D.C.Cir.1987) (per curiam) (collecting representative cases); see also Van Cauwenberghe v. Biard, --- U.S. ----, 108 S.Ct. 1945, 1949, 100 L.Ed.2d 517 (1988) (if claim "is effectively reviewable on appeal from final judgment, [it] is not an immediately appealable collateral order under Cohen ")
 
 
 [5]
 Indeed, if that were so, it scarcely seems likely that any remand would have been required. The very fact that the Board thought it necessary to remand "for further proceedings" counsels that a court exercise great caution in assuming that future proceedings will be entirely pro forma. Nor is petitioner's cavalier treatment of the remand order as a sort of naive mistake or redundancy, see Petitioner's Reply Brief at 3-4; id. at 7-8 n. 3, persuasive. OWCP could have asked the Board to reconsider the remand portion of its order, but chose not to do so. This omission buttresses the assumption that the Board believed it was necessary and desirable to have the ALJ consider the matter further