The **FALMOUTH NATIONAL BANK,**
Plaintiff, Appellant,

v.

**TICOR TITLE INSURANCE COMPANY,** Defendant,
Appellee.

No. 90–1335.

United States Court of Appeals,
First Circuit.

Heard Sept. 7, 1990.

Decided Dec. 12, 1990.

Douglas A. Hale, with whom Wynn & Wynn, P.C., Raynham, Mass., was on brief, for plaintiff, appellant.

Mary E. O'Neal, with whom Masterman, Culbert & Tully, Boston, Mass., was on brief, for defendant, appellee.

Before CAMPBELL and TORRUELLA, Circuit Judges, and CAFFREY,* Senior District Judge.

CAFFREY, Senior District Judge.

This is an appeal of an order of the United States District Court for the Dis-

* Of the District of Massachusetts, sitting by desig- nation.

trict of Massachusetts[1] dismissing the plaintiff's, The Falmouth National Bank ("Bank"), complaint without prejudice for failure to state a claim. The Bank brought this diversity action against the defendant, Ticor Title Insurance Company ("Ticor"), to recover for Ticor's failure to pay a loss sustained by the Bank as an insured under a mortgagee's title insurance policy. The alleged loss resulted from an adverse decision by the Massachusetts Supreme Judicial Court in the case of *Thibbitts v. Crowley*, a case specifically covered by the policy. The complaint alleged two counts, one for breach of the title insurance policy and a second count for violation of Mass.Gen.L. ch. 93A, Section 11. Ticor moved for an order dismissing or, in the alternative, staying all proceedings until the disposition on remand of the case which was pending in state court. The district court allowed Ticor's motion. On appeal, the Bank argues, as it did below, that Ticor's liability was "definitely fixed" according to the terms of the policy when the Supreme Judicial Court rendered its decision, and therefore, that Ticor breached the policy by failing to pay within thirty days. Thus, the Bank argues that the district court erred as a matter of law in dismissing the complaint as premature. Ticor, on the other hand, argues that its liability will not be "definitely fixed" until the final determination of the Bank's losses on remand. After reviewing the record and the appellant's arguments, we affirm the district court's dismissal of the complaint without prejudice.

I.

The relevant facts are not in dispute. On May 22, 1985, John F. Thibbitts ("Buyer") entered into a purchase and sale agreement with Patrick M. Crowley ("Seller") for land located in Mashpee, Massachusetts. Thibbitts assigned his rights under the agreement to South Cape Industrial Park, Inc. ("South Cape").[2] Thereafter, a dispute arose, and the Buyer sued the Seller in state superior court. The parties entered into a consent judgment which called for a conveyance on or before March 9, 1987. Difficulties arose at the closing, and when it became clear that the sale would not be consummated on the date set by the consent judgment, the Buyer brought an ex parte motion to extend time for performance. The judge granted that ex parte motion, extending the closing date to March 23, 1987. The closing did in fact go through on that date, the Seller conveying the Mashpee property to the Buyer, South Cape, for $1,250,000.00. At the same time, the Buyer executed a note and granted the Bank a mortgage to secure the note in the amount of $2,150,000.00. The amount of this loan in excess of the purchase price was to be advanced as a construction loan according to a set payment schedule.

In April, shortly after the closing, the Seller appealed the judge's order extending the time for performance under the consent judgment to the Massachusetts Appeals Court. Thereafter, the Supreme Judicial Court, on its own initiative, agreed to hear the appeal. The Bank did not learn of the Seller's appeal until September, at which time it notified the title insurer, Chicago Title Company ("Chicago"), of the pending appeal. When Chicago refused to insure any further advances from the Bank to the Buyer, the Bank similarly refused to disburse any more money. To remedy this situation, the Buyer arranged to have Ticor provide title insurance to the Bank. This policy provided coverage up to the amount of $2,150,000.00, and in a special "Note I," affirmatively insured against all loss, including attorney's fees, arising out of the appeal, final decision, judgment or award of the state court action *Thibbitts v. Crowley*.

Subsequent to the issuance of this policy, the Supreme Judicial Court held that the judge below had lacked the authority to extend unilaterally the time for perform-

---

1. Honorable Douglas P. Woodlock, United States District Judge, presiding.

2. Patrick M. Crowley was acting as Trustee of the Mashpee Industrial Park Realty Trust. He was replaced by Richard P. Crowley, who at the closing, conveyed the Mashpee property to South Cape. For simplicity purposes, the term "Buyer" shall be used to refer to both Thibbitts and South Cape.

ance under the consent judgment. *Thibbitts v. Crowley*, 405 Mass. 222, 226, 539 N.E.2d 1035, 1038 (1989). The Supreme Judicial Court therefore remanded the case to Barnstable Superior Court for reconveyance and for such other proceedings as were necessary, including making adjustments for the passage of time and for the Buyer's improvements to the property. *Id.* at 230, 539 N.E.2d at 1040.

As a result of the decision, the Bank made a claim to Ticor in a letter dated July 12, 1989 for payment of all losses. They set this amount at $1,915,878.46 plus interest, which represented the principal indebtedness outstanding on the Buyer's loan obligation. Ticor responded to the letter stating that the claim was premature, and that it would not pay until the Barnstable Superior Court, on remand, established the amount of actual damages. When Ticor refused to pay, the Bank sent a demand letter pursuant to Mass.Gen.L. ch. 93A. Since that time, both Ticor and the Bank have sought and were granted permission to intervene in the state court action.

The Bank instituted this action in Federal District Court for the District of Massachusetts for payment under the policy. Ticor moved for dismissal on the grounds that the complaint was premature given the Supreme Judicial Court's remand to the Barnstable Superior Court. The district court allowed that motion, holding that "liability" as used in the policy does not merely mean a determination regarding title, but also includes losses and damages, and therefore, that liability had not been "definitely fixed."

It is this determination that the Bank is appealing. After a careful review of the record, we affirm the district court's dismissal without prejudice of both counts of the complaint.

## II.

■ The parties' dispute is basically one of contract interpretation. Application of the terms of an insurance policy to established facts is a question of law. *Cody v. Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146, 439 N.E.2d 234, 237 (1982); *Robert Indus., Inc. v. Spence*, 362 Mass. 751, 755, 291 N.E.2d 407, 409–10 (1973); *Ober v. National Casualty Co.*, 318 Mass. 27, 31, 60 N.E.2d 90, 91 (1945). Thus, our review of the district court's dismissal of the plaintiff's complaint is plenary.

■ Title insurance policies are subject to the same rules of construction that apply to other types of insurance policies. *Brown v. St. Paul Title Ins. Corp.*, 634 F.2d 1103, 1107 (8th Cir.1980); *Lawyers Title Ins. Corp. v. Research Loan & Inv. Corp.*, 361 F.2d 764, 768 (8th Cir.1966); *Sandler v. New Jersey Realty Title Ins. Co.*, 36 N.J. 471, 479, 178 A.2d 1, 5 (1962); 9 Appleman, Insurance Law and Practice § 5201 (1981). The overall goal in interpreting an insurance policy is to ascertain the expectations of the parties. *Cullen Enter., Inc. v. Massachusetts Property Ins. Underwriting Ass'n*, 399 Mass. 886, 900 n. 27, 507 N.E.2d 717, 725 n. 27 (1987); *Eureka Inv. Corp., N.V. v. Chicago Title Ins. Co.*, 530 F.Supp. 1110, 1118 (D.D.C. 1982), *aff'd in relevant part and rev'd in part*, 743 F.2d 932 (D.C.Cir.1984).

■ In attempting to discern the expectations of the parties, Massachusetts courts look at the insurance contract as a whole in order to effectuate its overall purpose. *Cullen Enter., Inc.*, 399 Mass. at 900 n. 27, 507 N.E.2d at 725 n. 27; *Ober*, 318 Mass. at 31, 60 N.E.2d at 91 (1945); *see Lawyers Title Ins. Corp.*, 361 F.2d at 768. The corollary of this rule is that whenever possible, each word in an insurance policy should be considered and given some meaning. *Feinberg v. Insurance Co. of N. Am.*, 260 F.2d 523, 527 (1st Cir.1958).

■ When considering an insurance policy in its entirety, the general rule is that any ambiguity should be construed against the insurer as it is the insurer who supplies the contract. *Marston v. American Employers Ins. Co.*, 439 F.2d 1035, 1039 (1st Cir.1971); *Liberty Mut. Ins. Co. v. Tabor*, 407 Mass. 354, 362, 553 N.E.2d 909, 914 (1990) (quoting *Transamerica Ins. Co. v. Norfolk & Dedham Mut. Fire Ins. Co.*, 361 Mass. 144, 147, 279 N.E.2d 686, 688 (1972)); *Lawyers Title Ins. Corp.*, 361 F.2d at 768.

The rationale behind interpreting ambiguities against the insurer would not seem to apply as strongly when the transaction is between two parties of equal sophistication and equal bargaining power. *Eagle–Picher Indus., Inc. v. Liberty Mut. Ins. Co.,* 682 F.2d 12, 21 n. 6 (1st Cir.1982), *cert. denied,* 460 U.S. 1028, 103 S.Ct. 1279, 75 L.Ed.2d 500 (1983); *First State Underwriters Agency of New England Reinsurance Corp. v. Travelers Ins. Co.,* 803 F.2d 1308, 1314 n. 5 (3d Cir.1986); *Industrial Risk Insurers v. New Orleans Pub. Serv.,* 666 F.Supp. 874, 881 (E.D.La.1987); *McNeilab, Inc. v. North River Ins. Co.,* 645 F.Supp. 525, 547 (D.N.J.1986), *aff'd,* 831 F.2d 287 (3d Cir.1987); D. Burke, Jr., Law of Title Insurance 59 (1986); *see Commercial Ins. Co. of Newark, N.J. v. Gonzalez,* 512 F.2d 1307, 1313 n. 11 (1st Cir.), *cert. denied,* 423 U.S. 838, 96 S.Ct. 65, 46 L.Ed.2d 57 (1975).

■ We now turn to an application of these principles to the mortgagee title insurance policy in dispute. The first step is to examine the specific language of the provisions at issue. The Bank points to Paragraph 6 of the insurance policy, a standard provision in mortgagee policies. *See* Burke, *supra,* at 499. Paragraph 6 is entitled "Determination and Payment of Loss," and reads as follows: "(c) When liability has been definitely fixed in accordance with the conditions of this policy, the loss or damage shall be payable within 30 days thereafter." The Bank argues that liability was "definitely fixed" when the Supreme Judicial Court ordered the Buyer to reconvey the property to the Seller, and that the policy required Ticor to pay the loss within thirty days of that decision. Ticor argues, and the district court agreed, that liability would not be "definitely fixed" until the Barnstable Superior Court determined the damages on remand. The district court essentially equated loss with liability in interpreting Paragraph 6.

■ According to the canons of construction previously discussed, we must look at the meaning of the word "liability" in the context of the policy as a whole. Although 6(c) could be read as distinguishing between "loss" on one hand, and "lia-

bility" on the other, an examination of Paragraph 6 as a whole suggests that the two words are used synonymously. Paragraph 6 states that "(a) The liability of the Company under this policy shall in no case exceed the least of: (i) the actual loss of the insured claimant, or (ii) the amount of insurance stated in Schedule A...." Similarly, Endorsement No. 1 equates liability with the amount of loss, stating that "[l]iability ... is hereby increased ... bringing the total liability to $1,412,655.00." Thus, the language of the policy does not clearly support the interpretation that the Bank suggests. Furthermore, the sophistication of the Bank and the fact that it negotiated specific terms of the policy lead us to believe that the general rule of interpreting ambiguities in favor of the insured does not apply with the same force here and therefore does not compel us to adopt the Bank's interpretation.

■ The general rule regarding ambiguities also does not apply because the interpretation of the word "liability" propounded by the Bank conflicts with the basic characteristics of title insurance. First, title insurance is a contract of indemnity, not guarantee. *Gibraltar Sav. v. Commonwealth Land Title Ins. Co.,* 905 F.2d 1203, 1205 (8th Cir.1990); *Diversified Mortgage Investors v. U.S. Life Title Ins. Co. of N.Y.,* 544 F.2d 571, 574 n. 2 (2d Cir.1976); *Goode v. Federal Title and Ins. Corp.,* 162 So.2d 269, 270 (Fla.Dist.Ct.App. 1964) (quoting Annotation, Measure, extent, or amount of recovery on policy of title insurance, 60 A.L.R.2d 972, 975–76); *Green v. Evesham Corp.,* 179 N.J.Super. 105, 111, 430 A.2d 944, 947 (quoting *Diversified Mortgage Investors v. U.S. Life Title Ins. Co. of N.Y.,* 544 F.2d at 574), *certif. denied,* 87 N.J. 422, 434 A.2d 1095 (1981); *Grunberger v. Iseson,* 75 A.D.2d 329, 331, 429 N.Y.S.2d 209, 210 (1980); Burke, *supra,* at § 1.3.1. Thus, an insurer does not guarantee the state of the title, but rather, agrees to indemnify the insured for any loss. Burke, *supra,* at § 1.3.1. Another distinguishing characteristic of a contract to indemnify is that the loss must be actual; the mere existence of a defect covered

by the policy in and of itself is not sufficient to justify recovery. *Title & Trust Co. of Fla. v. Parker*, 468 So.2d 520, 523 (Fla.Dist.Ct.App.1985); *Ferrell v. Inter-County Title Guar. & Mortgage Co.*, 213 So.2d 518, 521 (Fla.Dist.Ct.App.1968); *see Green*, 179 N.J.Super. 105, 111, 430 A.2d at 947–48; *Goode*, 162 So.2d at 270; Burke, *supra*, at § 1.3.1. Currently, there is no determination of the exact amount of loss, if any, that Ticor owes the Bank.

The Bank's argument regarding the meaning of "liability" also fails to recognize the important distinction between a title insurance policy issued to the owner of property, and a policy such as the one in question here, issued to a mortgagee who merely has a security interest in the property. *See Bank of Miami Beach v. Lawyers' Title Guar. Fund*, 214 So.2d 95, 96 (Fla.Dist.Ct.App.1968), *cert. dismissed*, 239 So.2d 97 (1970); *Goode*, 162 So.2d at 270; *CMEI, Inc. v. American Title Ins. Co.*, 447 So.2d 427, 428 (Fla.Dist.Ct.App.1984); *Green*, 179 N.J.Super. 105, 109, 430 A.2d at 946; *Blackhawk Production Credit Association v. Chicago Title Insurance*, 144 Wis.2d 68, 78–9, 423 N.W.2d 521, 525 (1988); Burke, *supra*, at § 2.2. This distinction relates to the definition and measurement of the loss. More specifically, an owner-insured is entitled to the full market value of the property, a value that is immediately diminished by the presence of title defects.

On the contrary, a mortgagee-insured's loss cannot be determined unless the note is not repaid and the security for the mortgage proves inadequate. *Blackhawk Prod. Credit Ass'n v. Chicago Title Ins. Co.*, 144 Wis.2d at 78–79, 423 N.W.2d at 525 (1988); *CMEI, Inc.*, 447 So.2d at 428; *Green*, 179 N.J.Super. 105, 109, 430 A.2d at 946; Burke, *supra*, at § 2.2. Such is the case because it is only after the insurer or the insured sues on the note and the debtor fails to pay, that the actual loss can be determined. Burke, *supra*, at § 2.2. Put another way, it is not the mortgage note

that is insured, but rather, what is insured is the loss resulting from a defect in the security. *Southwest Title Ins. Co. v. Northland Bldg. Corp.*, 552 S.W.2d 425, 430 (Tex.1977). In the case at hand, the exact amount of this actual loss remains uncertain. The Supreme Judicial Court remanded the case for a determination of the loss, taking into consideration the passage of time and the Buyer's improvements to the property. Until that determination, there is no reconveyance, no repayment of the purchase price from the Seller to the Buyer, and no way to ascertain the dollar amount of the Bank's impaired security.

■ The plaintiffs attempt to circumvent this result by arguing that Ticor can pay the outstanding principal, interest and late charges due under the note and subrogate to the Bank's rights. This argument is unavailing. Paragraph 5 of the policy states in relevant part that "[Ticor] shall have the option to pay or otherwise settle … any claim insured against." Furthermore, it states that "[i]n case loss or damage is claimed under this policy by an insured, [Ticor] shall have the further option to purchase such indebtedness for the amount owing thereon...." Upon exercising the option, Ticor becomes subrogated to the Bank's rights according to Paragraph 10. The language of the policy makes it clear that subrogation is an option to be exercised at Ticor's discretion. To require Ticor to pay at this juncture would have the effect of amending the policy by making subrogation mandatory rather than optional.

There are two cases not raised in the parties' briefs that shed additional light on the meaning of Paragraph 6 entitled "Determination and Payment of Loss." In *McHenry Savings Bank v. Pioneer National Title Insurance Co.*, the Illinois Appellate Court examined Paragraph 6 of a mortgagee's title insurance policy, the language of which was identical to Paragraph 6 of Ticor's policy.[3] 186 Ill.App.3d 238, 132

---

**3.** The court quoted Paragraph 6 in "pertinent part," namely 6(a)(i) and (ii) which state:
  6. Determination and Payment of Loss

  (a) The liability of the Company under this policy shall in no case exceed the least of:
    (i) the actual loss of the insured claimant; or

Ill.Dec. 617, 540 N.E.2d 357 (1989). In reversing the lower court's grant of the insurer's motion for summary judgment, the court emphasized that the mortgagee policy only insured against "actual loss." On the point of actual loss, the court stated that there was an issue of material fact given that the record did not indicate if the property in question had been sold, nor did it indicate what its present value was. The court then equated "loss" with "liability" holding that "[w]ithout such factual determinations it is impossible to ascertain what actual loss, if any, plaintiff has suffered as a result of the invalid mortgage lien, and, therefore it cannot be determined what the extent of defendant's liability is under paragraph 6." *Id.* 132 Ill.Dec. at 621, 540 N.E.2d at 361. This conclusion applies with equal force in the situation at hand, where the extent of liability will not be determined until the conclusion of the proceedings in Barnstable Superior Court.

The second case addresses the specific language of Paragraph 6(c) concerning when liability is "definitely fixed." In *Davis v. Stewart Title Guar. Co.*, the Missouri Court of Appeals for the Western District addressed the question of whether the insurer had vexatiously refused to pay under a title insurance policy issued on owned property. 726 S.W.2d 839, 842 (Mo. App.1987). When the plaintiff attempted to sell the property to an abutting church, he was told that the church had an easement for parking over part of the tract. Upon learning of the right of easement asserted by the church, the plaintiff contacted the title insurer and requested that it take action. The insurer refused and the plaintiff therefore brought an action on his own against the church for unlawful detainer.

The title insurance policy in *Davis* provided that when presented with a claim of an adverse interest to the insured property, the insurer had the option of pursuing a quiet title action without unreasonable delay, or of paying any loss resulting from the defect. *Davis*, 726 S.W.2d at 845. Regarding the timing of payment of the loss, the policy contained precisely the same language as Ticor's policy, namely, that "[w]hen liability has been definitely fixed ... the loss or damage shall be payable within 30 days thereafter." *Davis*, 726 S.W.2d at 845 n. 2. In a lengthy opinion, the court held that the liability of the insurer was definitely fixed when it refused to take any action to quiet title. Thus, the court held that an offer of payment of the loss was due thirty days thereafter. *Davis*, 726 S.W.2d at 855.

At first glance, this holding would seem to lend support to the Bank's argument that "liability" and "loss" are not synonymous as liability was "fixed" in *Davis* before the loss was calculated. Upon closer examination, however, *Davis* is distinguishable because the policy in *Davis* was an owner's policy and not a mortgagee's policy such as that issued by Ticor.[4] As discussed above, there are substantive differences between the two types of policies. The interest of an owner, such as the plaintiff in *Davis*, is immediately diminished by the presence of a defect, in that case, the easement. *CMEI*, 447 So.2d at 428; *Green*, 179 N.J.Super. 105, 109, 430 A.2d at 946; Burke, *supra*, at § 2.2. The policy issued by Ticor, however, is a mortgagee's policy which means that the actual loss can only be determined after the Buyer is sued on the outstanding note and fails to pay the judgment. *See* Burke, *supra*, at § 2.2.

---

(ii) the amount of insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in paragraph 2(a) hereof, or

(iii) the amount of the indebtedness secured by the insured mortgage as determined under paragraph 8 hereof, at the time the loss or damage insured against hereunder occurs, together with interest thereon.

**4.** The opinion in *Davis* states that the plaintiff received the land as security for a promissory note. *Davis*, 726 S.W.2d at 842. Nonetheless

the opinion makes it clear that the policy was "issued on owned property." Likewise, in a previous appeal, the court stated that the plaintiff took out the title policy in conjunction with the real estate purchase. *See Davis v. Stewart Title Guar. Co.*, 695 S.W.2d 164, 165 (Mo.App. 1985). The plaintiff would not be considered an owner simply by virtue of a security arrangement given that Missouri follows the lien theory of mortgages. *See R.L. Sweet Lumber Co. v. E.L. Lane*, 513 S.W.2d 365, 368 (Mo.1974).

This determination will be made by way of the complaint in intervention asserted by the Bank for payment of the note. We are not unsympathetic to the plaintiff's concern that the loss may exceed the policy's limit while the state action is pending. Until that action is concluded, however, the amount owed by Ticor is undetermined.

■ Our conclusion that the Bank's action in this case was premature is supported by the existence of Paragraph 7 which states that "[n]o claim shall arise or be maintainable under this policy ... in the event of litigation until there has been a final determination by a court of competent jurisdiction...." According to the principles of construction discussed previously, we must assume that this provision can be read together with Note I which expanded the standard coverage to include the pending state case. Reading the two provisions together supports Ticor's position, as "final determination" clauses refer to a "final determination of *any* litigation concerning the subject matter of a claim." Burke, *supra*, at § 9.4.3 (Supp.1989) (emphasis added); *see Eureka*, 530 F.Supp. at 1118 n. 8 (no liability until "the litigation was finally resolved"). "Any litigation" would include the Supreme Judicial Court's remand to Barnstable Superior Court in *Thibbitts v. Crowley.*

This construction of the "final determination" provision in Ticor's policy is consistent with those cases addressing the issue of when a judgment is final for appeal purposes. The United States Supreme Court has held that a final decision is one that ends litigation and leaves the court with nothing to do but execute the judgment. *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). Thus, a determination of liability is not a final decision where the issue of damages remains unresolved. *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744, 96 S.Ct. 1202, 1206, 47 L.Ed.2d 435 (1976); *Director, Office of Workers' Compensation Programs, U.S. Dep't of Labor v. Bath Iron Works Corp.*, 853 F.2d 11, 15 (1st Cir.1988) (rejecting argument that because remand involved a purely ministerial arithmetic function, the judgment was final).

Despite our conclusion that the Bank's action in this case was premature, it is worth noting that, although rare, it is possible to negotiate a title insurance policy provision that permits recovery for losses prior to a final determination of litigation. *See, e.g., Eureka*, 530 F.Supp. at 1118. For example, the parties in one case drafted "Note II" of an owner's title insurance policy to encompass loss or damage arising out of the enforcement or attempted enforcement of rights by tenants in the building covered by the policy. *Id.* at 1114. The court had to resolve the conflict between Note II and a "final determination" clause identical to that in Ticor's policy.

The court held that standing alone, the "final determination" provision meant that the insurer would not be liable for any amount until "litigation was finally resolved." *Id.* at 1118 n. 8. Unlike the present situation, however, the "final determination" provision could not be reconciled with "Note II." Given that the parties had specifically negotiated the unique coverage of Note II, the court held that Note II prevailed, and the company was liable for losses regardless of the ultimate outcome of the tenants' action. *Id.* at 1118. The court noted, however, that coverage of interim losses as provided for by the parties in *Eureka* was novel. *Id.* at 1117. Moreover, it is worth pointing out that *Eureka* involved an owner's rather than a mortgagee's policy of title insurance.

It follows that because there has been no breach of the title insurance contract, the plaintiffs have also failed to state a claim for violation of Mass.Gen.L. ch. 93A. Thus, that count of the complaint was also properly dismissed.

In sum, and for all of the reasons stated above, the district court did not err in dismissing without prejudice as premature the Bank's action for payment under the title insurance policy and for violation of Mass. Gen.L. ch. 93A. Accordingly, the district

court's judgment is hereby *affirmed.*
*Costs to appellees.*