### William L. HATCH and Melissa H. Hatch, Plaintiffs,

v.

### FIRST AMERICAN TITLE INSURANCE COMPANY, Defendant.

No. 93 Civ. 12512 (MEL).

United States District Court, D. Massachusetts.

July 11, 1995.

---

Brian D. Widegren, Harwichport, MA, for plaintiffs.

Barry S. Fischer, Bernkopf, Goodman & Baseman, Boston, MA, for defendant.

LASKER, District Judge.

When William and Melissa Hatch bought a home in Rowley, Massachusetts in April, 1986, they purchased a title insurance policy from First American Title Insurance Company. A little over a year later, the Hatches contracted to sell their Rowley property for $136,000 and, in anticipation of that sale, bought a home in Wayland, Massachusetts. To finance the purchase of the Wayland property, the Hatches borrowed $29,000, to be repaid with interest upon the sale of the Rowley property.

On November 30, 1987, the Hatches were notified by the prospective buyers of the Rowley property that there was an alleged defect in their title which rendered it unmarketable. In January, 1988, the Hatches terminated the Rowley land-sale contract and notified First American that their title to the Rowley property had been rejected as unmarketable.

First American admits that there was a "hole" in the Hatches' title to the Rowley property—the result of a very old town ordinance that provided for a long-unused right to graze cattle on the land. First American filed a "Petition for Registration" in the Massachusetts Land Court. In June, 1994, the Land Court entered judgment establishing the Hatches' title to the Rowley property. Soon thereafter, the Hatches sold the property, but for only $114,000, $22,000 less than the amount of their earlier contract.

After it was notified of the defect in title, First American voluntarily assumed payment of the interest due on the Rowley property, which was mortgaged; the Hatches, however, continued to pay interest on the loan that financed the purchase of their Wayland home. In 1993, the Hatches made a claim under the title insurance policy, demanding $136,000 for the loss of the value of their property and $20,000 for interest paid on the Wayland loan. First American denied liability under the contract. Now alleging a breach of contract, the Hatches sue First American. First American moves for summary judgment on the ground that the Hatches' claim is barred by a provision of the policy.

The facts are not in dispute. The question is one of contract interpretation. Paragraph 7 of the Hatches' title insurance policy provides:

No claim shall arise or be maintainable under this policy (a) if the Company, after having received notice of an alleged defect, lien or encumbrance insured against hereunder, by litigation or otherwise, removes such defect, lien or encumbrance or establishes the title, as insured, within a reasonable time after receipt of such notice; (b) in the event of litigation until there has been a final determination by a court of

competent jurisdiction, and disposition of all appeals therefrom, adverse to title, as insured, as provided in paragraph 3 hereof; or (c) for liability voluntarily assumed by an insured in settling any claim or suit without prior written consent of the Company.

First American contends that because it did undertake litigation to cure title in the Rowley property, and because that litigation did not result in a final judgment adverse to title, subsection (b) precludes the Hatches' claim. The Court of Appeal of Florida adopted this interpretation of an identical provision in *Lawyers Title Insurance Company v. Synergism One Corp.*, 572 So.2d 517 (1990), *rev. denied*, 583 So.2d 1037 (Fla.1991). There, a neighboring farmer claimed a right to use the insured's land. The insured successfully sued to eject the farmer, who appealed. The title insurer then settled the dispute by paying the farmer for a quit-claim deed. The insured sued the insurance company, alleging that because the insurer failed to cure the title defect within a reasonable time, it was liable under the policy for the costs of resulting delays in construction. The trial court agreed, holding that two years and nine months was an unreasonable delay within the meaning of 7(a), and that, accordingly, paragraph 7 did not preclude the insured's claim. The Florida Court of Appeal reversed, holding that, although the insurer did not ultimately resolve the matter through litigation, paragraph 7(b) nevertheless barred the plaintiff's claim. Once litigation is instituted, the Court held, "[t]he insured's claim must await an adverse title determination by a court. The claim only lies once a court speaks, and not before, and not if the court's judgment is favorable.'" (citing D. Burke, Law on Title Insurance (1986 & 1988 Supp.)); *see also, Cocoa Properties, Inc. v. Commonwealth Land Title Insurance Company*, 590 So.2d 989 (Fla.App. 1991) (noting in dicta that where litigation is brought to a favorable conclusion, paragraph 7(b) precludes a claim under the policy).

The Court of Appeals of South Carolina shares this view of the matter. In *First Federal Savings Bank of Brunswick v. Stewart Title Guaranty Co.*, 451 S.E.2d 916 (1994), the Court wrote:

> Here, [the insurer] elected to … have a court determine the question of whether the titles insured by its policies were as they were insured. The court, rather than speak adversely to the title, resolved the title defects. Absent a finding adverse to the title or to the lien, as the case may be, no claim arose or loss occurred for which [the insurer] could be held responsible under its policies.

Backed by these decisions, First American contends that a favorable court ruling—whether timely or not—precludes liability under paragraph 7(b). It asserts that paragraph 7(a), which bars claims when an alleged defect is cured "by litigation or otherwise … within a reasonable time," is irrelevant, because, as it says, "the Policy … limits liability of the insurer in *each* of three different scenarios, as evidenced by the use of the word 'or' ".

The Hatches assert that clauses 7(a) and 7(b) must be read together and that, when so read, they bar a claim only where litigation is successfully concluded *within a reasonable time*. They contend that if the Land Court action, unresolved for five years, was unreasonably delayed by First American, paragraph 7 does not bar a claim for damages under the contract. If a final judgment in favor of title excused an insurer's indifference or negligence during litigation, they argue, the words "by litigation or otherwise" in paragraph 7(a) would be rendered meaningless.

■ Title insurance policies are subject to the rules of construction which apply to other types of insurance policies. *Falmouth National Bank v. Ticor Title Insurance Co.*, 920 F.2d 1058, 1061 (1st Cir.1990). The goal is to ascertain the expectations of the parties. The contract is to be construed as a whole. *Id.* at 1061.

■ Paragraph 7 provides, in effect, that no claim shall arise under the policy (a) if any defect is cleared by litigation within a reasonable time; or (b) if any defect is cleared by litigation, ever. As First American has noted, the two provisions are not literally con-

tradictory. Neither, however, are they absolutely compatible. Rather, the first provision implies what the second precludes: that an insurer must reasonably litigate any lawsuit which it undertakes on behalf of the insured. A good illustration of the problem is provided by the contradictory conclusions reached by the Court of Appeal of Florida in *Cocoa Properties*, 590 So.2d 989. Toward the top of page 991, the Court adopts the view that, under 7(b), a judgment in favor of title bars all claims under the policy; on the same page, however, the Court concludes that under paragraph 7(a), an insured may maintain a claim if the insurer "did not remove the title defect, by litigation or otherwise, within a reasonable length of time after receiving notice of the defect." The first of these conclusions is relied upon by First American; the second states exactly the view urged by the Hatches. Both of the statements cannot be true, yet both are implied. In this sense, the contract is ambiguous.

 Massachusetts courts observe the frequently cited principle that ambiguities contained in an insurance policy are to be construed against the insurer, typically the drafter of the contract. *See Falmouth*, 920 F.2d at 1061; *Liberty Mutual Insurance Co. v. Tabor*, 407 Mass. 354, 553 N.E.2d 909 (1990). The *Falmouth* Court noted one caveat to this rule: "[t]he rationale behind interpreting ambiguities against the insurer would not seem to apply as strongly when the transaction is between two parties of equal sophistication and equal bargaining power." *Falmouth*, 920 F.2d at 1062. Such was clearly not the case here. The Hatches bought the insurance policy from First American at the closing of their Rowley land purchase; it was not even delivered to them until 18 days later. The Hatches are entitled, therefore, to have the ambiguity contained in paragraph 7 construed against First American, the drafter of the language in question.

Accordingly, the contract at bar is interpreted to mean—as paragraph 7(a) suggests—that the Hatches may prevail on their claim if they can demonstrate that First American failed to cure the title defect in question within a reasonable time after its discovery.

The Hatches notified First American of the title defect in January, 1988. The Massachusetts Land Court action, commenced in early 1989, was concluded in June, 1994. Whether First American cured the defect within a reasonable time is a question of fact. *See Nebo, Inc. v. Transamerica Title Insurance Co.*, 21 Cal.App.3d 222, 228, 98 Cal.Rptr. 237, 241 (1971) ("What constitutes a reasonable time is a question of fact, depending upon the situation of the parties, the nature of the transaction, and the facts of the particular case"); *see also Cocoa Properties*, 590 So.2d at 991. Accordingly, First American's motion for summary judgment is denied.

It is so ordered.