573 A.2d 230

**Michael TRIGIANI, Trustee, and Wyoming National Bank of Wilkes–Barre, now Merchants Bank North, Appellees,**

v.

**AMERICAN TITLE INSURANCE COMPANY, Successor to Berks Title Insurance Company, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 13, 1989.

Filed April 18, 1990.

Robert A. Weinert, Allentown, for appellant.

Philip M. Hof, Easton, for appellees.

Before BROSKY, WIEAND and JOHNSON, JJ.

WIEAND, Judge:

This appeal requires that we review the rights and liabilities of a second mortgagee and a title insurance company after the second mortgagee's security has been impaired by

unexpected mechanic's liens which are entitled to priority over the lien of the second mortgage.

On June 25, 1982, Nazareth Fairgrounds, Inc. executed and delivered to Michael Trigiani a second mortgage in the amount of two hundred thousand ($200,000) dollars, which mortgage was duly recorded and constituted a lien on real estate owned by the mortgagor in the Borough of Nazareth, Northampton County. The mortgage was subsequently assigned to the Wyoming National Bank of Wilkes–Barre, now the Merchants Bank North. A policy of title insurance with a limit of two hundred thousand ($200,000) dollars was issued by American Title Insurance Company [1] to insure the holder of the second mortgage against loss incurred by reason of "any statutory lien for labor or material which now has gained or hereafter may gain priority over the lien of the insured mortgage."

In February and March, 1983, three mechanic's liens were filed against the mortgaged real estate. American Title Insurance Company defended these claims, contending that they were not entitled to priority over the second mortgage. Its defense was unsuccessful. The priority of the mechanic's liens was upheld by the trial court, whose decision was affirmed on January 25, 1988 by the Superior Court. The Supreme Court denied allocatur on July 1, 1988. Thereafter, the mechanic's lien claims were paid by American Title Insurance Company.

In the meantime, the holder of the second mortgage had filed a civil action in which it contended that the second mortgage had been rendered worthless by the mechanic's lien claims and that American Title Insurance Company was liable for the second mortgagee's loss. At the time of the trial of this action, the evidence established, and it is not disputed, that the mortgagor had been adjudicated bankrupt. Moreover, its real estate had been sold by the sheriff on June 3, 1986, pursuant to foreclosure proceedings on The Bank of Pennsylvania's first mortgage in the amount of one

---

1. American Title Insurance Company is the successor to Berks Title Insurance Company.

million, five hundred thousand ($1,500,000) dollars. The second mortgagee had not entered a bid at the sheriff's sale, and the real estate had been purchased by the first mortgagee. The trial court found that the second mortgagee had sustained a loss in the amount of two hundred thousand ($200,000) dollars and entered judgment against American Title Insurance Company in that amount.

"A contract of title insurance is an agreement to indemnify against loss through defects of title." *Sattler v. Philadelphia Title Ins. Co.*, 192 Pa.Super. 337, 342, 162 A.2d 22, 24 (1960). The general rule was set forth by the Supreme Court of Pennsylvania in *Fifth Mutual Bldg. Soc. of Manayunk's Appeal*, 317 Pa. 161, 176 A. 494 (1935), as follows:

> In *Trenton Potteries Co. v. Title Guarantee & Trust Co.*, 176 N.Y. 65, 68 N.E. 132, the Court of Appeals ... said: "The contract is one of insurance against defects in title, unmarketability, liens, and incumbrances. The risks of title insurance end where the risks of other kinds begin. Title insurance, instead of protecting the insured against matters that may arise during a stated period after the issuance of the policy, is designed to save him harmless from any loss through defects, liens, or incumbrances that may affect or burden his title when he takes it. It must follow, as a general rule, therefore, that when the insured gets a good title the covenant of the insurer has been fulfilled, and there is no liability." The converse of this is that when the insured gets a bad title, or the policy has been otherwise breached, the covenant of the insurer has not been fulfilled, and there is a *liability*. A liability having attached, the only thing that remains is to ascertain *its extent* in terms of dollars.

*Id.*, 317 Pa. at 164–165, 176 A. at 495. However, a "policy [may] by apt language [provide] that the liability of the insurer [will] not attach until the loss ha[s] been definitely ascertained by execution on any judgments the policy insured against or others...." *Id.* at 164, 176 A. at 495. Nevertheless, language in a policy of insurance must be

clear and precise in order to prevent unfair surprise. *Bishop v. Washington*, 331 Pa.Super. 387, 401, 480 A.2d 1088, 1095 (1984).

The policy issued by American Title Insurance Company contained language which permitted it, at its option, to settle any claims asserted against the real estate or, in the alternative, to litigate to final determination the validity of liens filed against the same. Paragraph 7 of the policy contained the following limitation of liability:

> No claim shall arise or be maintainable under this policy (a) if the Company, after having received notice of an alleged defect, lien or encumbrance insured against hereunder, by litigation or otherwise, removes such defect, lien or encumbrance or establishes the title, or the lien of the insured mortgage, as insured, within a reasonable time after receipt of such notice; (b) in the event of litigation until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured, as provided in paragraph 3 hereof; or (c) for liability voluntarily assumed by an insured in settling any claim or suit without prior written consent of the Company.

Under (a), the insurer had the option of removing the mechanic's lien claims within a reasonable time after receiving notice thereof. Under (b), the insurer also had the option of litigating the validity of the mechanic's lien claims, in which event the insured was not permitted to assert a claim until after the validity and priority of the liens had been finally litigated.

The title insurance company did not satisfy or otherwise remove the mechanic's liens within a reasonable time. Instead, it opted to litigate the priority of the mechanic's liens. Its litigation, however, was unsuccessful. The priority of the mechanic's liens was upheld, and, on July 1, 1988, the Supreme Court denied allocatur. By this time, the second mortgagee's loss was complete. Because of the mechanic's lien claims which were pending at the time of the sheriff's sale, the equity in the real estate had been consumed, and

the second mortgagee could not protect itself by appropriate bidding.

After the litigation between the title insurance company and the mechanic's lien claimants came to an end, the title insurance company paid the mechanic's lien claimants and obtained a satisfaction of their liens. This was done because the title insurance company had a contractual obligation to do so by virtue of a separate policy of title insurance which had been issued to the holder of the first mortgage, which had purchased the property at the sheriff's sale. Because of this separate policy, American Title Insurance Company was required to achieve for The Bank of Pennsylvania a title which was free and clear of liens and encumbrances. By paying the lien claimants, the title insurance company fulfilled its separate obligation to the first mortgagee, but it did not thereby fulfill its obligation to the second mortgagee. The second mortgagee had sustained a separate loss, and the title insurance company, pursuant to a separate policy, had agreed to indemnify the second mortgagee for that loss.

We reject the title insurance company's argument that the second mortgagee's loss was not caused by the priority of the mechanic's liens but by its own failure to protect itself at the sheriff's sale by purchasing the real estate for an amount in excess of the unpaid balance owed on the first mortgage. The security for the second mortgage had been the value of the real estate in excess of the amount needed to satisfy the first mortgage. This excess value, however, was consumed and disappeared when mechanic's liens claims were filed and achieved priority over the lien of the second mortgage. It is correct, as the title insurance company argues, that it had the option of paying the lien claims, but it was required by the terms of its policy with the second mortgagee to do so within a reasonable time. This it did not do. By the time of the foreclosure on the first mortgage, a reasonable time for disposing of the liens by payment had expired. Thereafter, the second mortgagee's loss had accrued.

The insurance company also had the right under its policy to litigate the validity and priority of the mechanic's lien claims. This it did do. When the liens were determined finally to be valid and entitled to priority, the insured had sustained a very real loss for which the title insurance company had agreed to provide indemnification. When the title insurance company failed to indemnify its insured, it breached its contract of title insurance.

It is true, as the appellant-insurer argues, that an insured under a title insurance policy is entitled to recover only for losses as a result of defects in the title caused by liens and encumbrances. *Whiteman v. Merion Title and Trust Co.,* 25 Pa.Super. 320 (1904). The title insurance company is not a surety for the mortgaged debt or a guarantor of its payment, and it has no liability to an insured second mortgagee for losses due to failure of value rather than failure of title. *Narberth Building and Loan Ass'n v. Bryn Mawr Trust Co.,* 126 Pa.Super. 74, 190 A. 149 (1937); *Whiteman v. Merion Title and Trust Co., supra.* In the instant case, however, the evidence showed and the trial court found that the insured mortgagee's loss had been caused by mechanic's liens which achieved priority over the second mortgage. To require the second mortgagee, in the face of these valid mechanic's liens, to throw good money after bad by purchasing the real estate for an amount in excess of its value would be entirely unreasonable. The policy of title insurance had been purchased by the second mortgagee to protect itself against title encumbrances which impaired the priority of its second mortgage. When its mortgage interest was defeated by the prior mechanic's liens, the title insurance company was required to pay the loss which the mortgagee had sustained.

The judgment is affirmed.