Neel, J.
Plaintiff Debral Realty, Inc. (“Debral”) filed this action to recover payment from Ticor Title Insurance Company (“Ticor”) under a title insurance policy issued on property mortgaged to Debral. The parties have filed cross-motions for summary judgment.
For the following reasons, summary judgment shall enter for Ticor on Count I of the Complaint, and partial summary judgment shall enter for Ticor on Count II of the Complaint.
BACKGROUND
The parties have submitted an agreed upon stipulation of facts. The relevant facts are as follows.
On June 9, 1988, Debral loaned $300,000 to Overview Development Corporation and Stoneymeade Development Corporation. This loan was secured by a mortgage on properly in Concord and Acton, Massachusetts.
In December 1988, Debral agreed to release one of the secured parcels of land from the mortgage; in exchange, Debral agreed to accept substitute mortgages on the personal residences of Richard M. Brown and Mark M. Gallagher, the principals of Overview and Stoneymeade.
On December 7, 1988, Richard M. Brown and his wife granted Debral a mortgage on their home in Acton, and Mark M. Gallagher granted Debral a mortgage on his home, also in Acton. At that time, Debral was aware that both Acton properties were subject to a first mortgage in favor of Century Bank & Trust Company (“Century”) in the amount of $617,530. Debral was also aware that the Acton properties were subject to an execution in favor of Concord Lumber Company in the amount of $142,166.22. Prior to the closing on the December 7, 1988 mortgages, the attorney representing Brown and Gallagher, Mark L. Scheier, informed Debral that the execution in favor of Concord Lumber would be “taken care of at closing” *157 and was “not a concern.” Scheier’s firm, Scheier, Scheier & Graham, P.C., was at the time a policy-issuing agent of Ticor.
On December 12, 1988, Ticor, through its agent Scheier, Scheier & Graham, P.C., issued to Debral two title insurance policies covering the Acton properties, each in the amount of $250,000. The policies listed, as the only lien on the Acton properties superior to Debral’s mortgages, the outstanding mortgage in favor of Centuiy. They did not list the Concord Lumber execution, which had not been “taken care of,” and which, along with the Century mortgage, was superior to Debral’s mortgages.
In March 1989, Century had the Acton properties appraised at a combined value of $766,000. In October 1989, Debral issued notices of intention to foreclose to Gallagher and Brown. When Debral commenced foreclosure proceedings in the summer of 1990, it learned that the execution in favor of Concord Lumber was still outstanding, and was superior to Debral’s interest. Debral continued with the foreclosures and, as the highest bidder, acquired title to the Acton properties subject to Century’s mortgage and Concord’s execution.
On May 22, 1991, Centuiy foreclosed its first mortgage on the Acton properties. At that time, the combined fair market value of the properties was $635,000; the total amount owed to Centuiy was $710,000. The properties sold for $580,000 at foreclosure, leaving a substantial deficiency owed to Century. Neither Concord nor Debral received any funds from the foreclosure, and their liens were extinguished.
After filing a claim for payment under the title insurance policies and being denied payment, Debral filed an action in Superior Court. The action was dismissed on December 9, 1991, on the grounds that Debral had not made sufficient efforts to collect the sums it was owed by the obligors and guarantors of the underlying debt.[1] Debral subsequently filed in Concord District Court actions against the obligors and guarantors, seeking to recover $131,377.77 it claimed due under the June 9, 1988 loan to Overview and Stoneymeade. In March 1995, Debral settled those actions under an arrangement whereby, for an actual cash payment of $30,000 from defendants (which was paid in full by October 1996), Debral filed in those actions an agreement for judgment in the amount of $95,000 marked “paid in full.” Debral commenced this action against Ticor in October of 1995.
DISCUSSION
Both parties ask this Court to grant summary judgment, as a matter of law, pursuant to Mass.R.Civ.P. 56. A court may grant summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Regrading v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue “and that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Id. A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 714 (1991). “[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
Count I — Contractual Recovery on Title Insurance Policies
Title insurance is a contract of indemnification: it pays the policy holder only for actual loss or damage caused by a title defect, and does not insure repayment of the underlying secured debt. Falmouth Nat’l Bank v. Ticor Title Ins. Co., 920 F.2d 1058, 1062-63 (1st Cir. 1990) (applying Massachusetts law). Accordingly, any damages that may be owed to Debral by Ticor are determined by the extent of any actual loss to Debral caused by the title defect.
The dispute in this case arises over the point in time at which “actual loss” is determined. The parties agree that Debral’s “actual loss” is measured by the difference between what Debral did in fact recover and what it would have recovered without the title defect. However, Ticor claims that Debral cannot assess actual loss until it has pursued its remedies against the mortgagors to the fullest extent, citing the First Circuit’s holding in Falmouth, supra. Applying Ticor’s theoiy of actual loss, Debral’s loss was not fixed until it recovered a judgment against the mortgagors and failed to receive full payment on that judgment. At that point, Ticor contends, Debral had no actual loss, as the foreclosure of the first mortgage resulted in a sale price that was insufficient to satisfy even the first mortgage.
In contrast, Debral urges the Court to rule that actual loss is assessed at the time of the October 1989 default on the loans secured by Debral’s mortgages. At that time, the property had a market value of $731,000, and a first mortgage amount of $675,000, leaving equity in the amount of $61,000 *158 which Debral could have recovered had the defect not existed.[2]
“The policy issued by Ticor ... is a mortgagee’s policy which means that the actual loss can only be determined after the Buyer is sued on the outstanding note and fails to pay the judgment." Falmouth, 920 F.2d at 1064. If that rationale is applied to the facts of this case, the earliest date as of which Debral’s actual loss can be determined is the date by which it had recovered a judgment in Concord District Court for $95,000, and had failed to receive full payment on that judgment. That date is March of 1995 at the earliest, when Debral entered into a settlement agreement with the defaulting mortgagors and subsequently received $30,000 in satisfaction of the judgment: that date is also four years after Centuiy foreclosed on its first mortgage, with a price at foreclosure that was insufficient to satisfy even the first mortgage.
Debral urges the Court to find Ticor Liable for its losses under the title insurance policy because “. . . Ticor, through the acts of its title issuing agent, knew or should have known of the existence of a title defect, failed to communicate this information to its insured, and then denied liability. (Debral’s Memorandum in Support of Its Cross-Motion for Summary Judgment, p. 3.) While this allegation may state a claim for recovery against Ticor by Debral in tort, it does not state a claim for indemnification under the title policy, if no actual loss resulted from the title defect. That there may be claims sounding in misrepresentation, fraud or negligence does not change the conclusion that Debral suffered no "actual loss" under its title insurance policy as defined by the title policy and as defined in Falmouth, supra.
Count II — Violations of G.L.c. 93A and G.L.c. 176D
Contrary to Ticor’s contention, the granting of summary judgment on the indemnification claim does not necessitate the granting of summary judgment on the claim pursuant to G.L.c. 93A and G.L.c. 176D. To be sure, Ticor’s denial of Debral’s claim for indemnification under the policy was proper and supported by law; in a case such as this, courts have held that a claim for unfair settlement practices pursuant to G.L.c. 93A and G.L.c. 176D will not lie. Spurlin v. Merchants Ins. Co. of New Hampshire, 866 F.Sup. 57, 62 (1994), aff'd 57 F.3d 9; Alan Corp. v. International Surplus Lines Insurance Co., 823 F.Sup. 33, 38 (D.Mass. 1993) aff'd 22 F.3d 339 (1st Cir. 1994); Gulezian v. Lincoln Insurance Co., 399 Mass. 606 (1987). The instant case sets forth additional bases for statutory liability, however, including the alleged acts of Ticor’s agent in misrepresenting to Debral that the Concord Lumber Company execution would be “taken care of’ at closing, and misrepresenting that the only lien remaining as of the date of closing was the Century mortgage. Accordingly, a claim may still exist for unfair or deceptive acts or practices by Ticor or its agents in the issuance of the title insurance policy.
An insurance company is liable under G.L.c. 176D if it ”[m]isrepresents the . . . terms of any insurance policy.” G.L.c. 176D, §3(l)(a). Moreover, G.L.c. 176D, §3(11) encompasses “(m)isrepresentation in insurance applications: making false or fraudulent statements or representations on or relative to an application for an insurance policy ...” Each of these statutory provisions provides a basis for liability under G.L.c. 176D and G.L.c. 93A that is separate and apart from a claim for unfair settlement practices under c. 176D, §3(9).
To the extent that Count II alleges unfair settlement practices in violation of G.L.c. 93A and 176D, the law is clear that such a claim will not lie where denial of coverage was correct or in good faith. Spurlin, 866 F.Sup. at 62. Therefore, summary judgment is properly entered on Count II to the extent of the unfair settlement claim. However, to the extent that Count II and the factual allegations of the complaint allege some violation of G.L.c. 93A and G.L.c. 176D distinct from the claim of unfair denial of insurance coverage, summary judgment is improper. A question of fact exists as to whether Ticor, or its agents, acted unfairly or deceptively with regard to the issuance of the title insurance policies, and this issue is properly left to a determination by the trier of fact.
ORDER
For the foregoing reasons, Ticor’s motion for summary judgment is ALLOWED as to Count I, ALLOWED as to so much of Count II as alleges unfair settlement practices, and is otherwise DENIED as to Count II. Debral’s cross motion for summary judgment is DENIED.

The court (Connolly, J.) based its decision on the holding set forth in Falmouth National Bank v. Ticor Title Ins. Co., 920 F.2d 1058 (1st Cir. 1990).

Debral cites no Massachusetts cases in support of this position, and instead urges this Court to adopt the reasoning in Trigiani v. American Title Insurance Company, 573 A.2d 230 (1990), a Pennsylvania Superior Court case. In Trigiani, a title insurance company was required to pay the mortgagee the full amount of the secured debt when mechanics liens assumed priority over the insured mortgagee’s interest. Debral’s reliance on this case is misplaced. The mechanics liens in Trigianiwere filed after the title policy was issued; the title insurance policy contained a specific provision allowing for indemnification from the title insurer for loss due to “any statutory lien for labor or material which now has gained or will hereafter gain priority over the lien of the insured mortgage.” Id. at 230. The facts of Trigiani are inapposite to the instant case.